THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC.<br><br>  Plaintiff,<br><br>  v.<br><br>XAVIER BECERRA, Secretary of Health and Human Services<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES<br><br>ROBERT M. CALIFF, Commissioner of Food and Drugs<br><br>U.S. FOOD AND DRUG ADMINISTRATION<br><br>  Defendants,<br><br>  and<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>  Proposed Defendant-Intervenor | Case No. 23-cv-01819 |

### UNOPPOSED MOTION TO INTERVENE OF AVADEL CNS PHARMACEUTICALS, LLC

Avadel CNS Pharmaceuticals, LLC ("Avadel") hereby moves to intervene as of right in the above-captioned suit as a Defendant, pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, Avadel seeks permissive intervention under Federal Rule of Civil Procedure 24(b).

Avadel also respectfully requests that its deadline to file a responsive pleading be set to match that of the Federal Defendants. *See, e.g.*, *Avadel v. FDA*, No. 1:22-cv-02159-APM (July 28, 2022), Minute Order at 1 ("The deadlines for Federal Defendants and any Intervenor-

Defendant to respond to the Complaint shall be suspended pending the Court's resolution of the parties' cross-motions for summary judgment.").

Counsel for Avadel has conferred with counsel for Defendants Xavier Becerra, the U.S. Department of Health and Human Services, Robert Califf, and the U.S. Food and Drug Administration and counsel for Plaintiff Jazz Pharmaceuticals, Inc. pursuant to Local Civil Rule 7(m). The Federal Defendants consent to Avadel's motion and Jazz does not oppose it.

The grounds for Avadel's motion are set forth in its accompanying memorandum of points and authorities.

Respectfully submitted,

Dated: June 27, 2023

/s Philip J. Perry
Philip J. Perry (DC Bar No. 434278)
John R. Manthei (DC Bar No. 447123)
Andrew D. Prins (DC Bar No. 998490)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: philip.perry@lw.com

Nicholas L. Schlossman (DC Bar No. 1029362)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910 7300
Fax: (737) 910.7301

*Attorneys for Proposed Defendant-Intervenor Avadel CNS Pharmaceuticals, LLC*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC.<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, Secretary of Health and Human Services<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES<br><br>ROBERT M. CALIFF, Commissioner of Food and Drugs<br><br>U.S. FOOD AND DRUG ADMINISTRATION<br><br>Defendants,<br><br>and<br><br>AVADEL CNS PHARMACEUTICALS, LLC,<br><br>Proposed Defendant-Intervenor | Case No. 23-cv-01819 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION OF AVADEL CNS PHARMACEUTICALS, LLC TO INTERVENE AS DEFENDANT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................5

ARGUMENT ..........................................................................................................................9

I.     Avadel Has a Right to Intervene Under Rule 24(a) ................................................9

        A.     Avadel's Motion Is Timely ..........................................................................10
        B.     Avadel Has a Legally Protected Interest .....................................................10
        C.     This Action May Impair Avadel's Interest .................................................11
        D.     No Existing Party Adequately Represents Avadel's Interest ......................12
        E.     Avadel Has Standing ....................................................................................13

II.    Alternatively, Permissive Intervention Is Proper Under Rule 24(b) .....................14

CONCLUSION .....................................................................................................................14

# INTRODUCTION

Proposed Defendant-Intervenor Avadel CNS Pharmaceuticals, LLC ("Avadel") is the developer of LUMRYZ, a drug designed to treat narcolepsy with a groundbreaking, once-nightly dosing schedule. Narcolepsy is a rare but debilitating chronic neurological disorder that affects the brain's ability to control sleep-wake cycles. Avadel has spent nearly a decade developing LUMRYZ to treat narcolepsy symptoms in adults using sodium oxybate, a central nervous system ("CNS") depressant that helps to induce deep, restful sleep.

Plaintiff Jazz Pharmaceuticals, Inc. ("Jazz") manufactures and markets the only other oxybate drugs currently available to treat narcolepsy in the United States, known as Xyrem and Xywav.[1] The principal drawback with Jazz's drugs is that they require twice-nightly dosing—one dose right before bedtime, and a second dose taken 2.5 to 4 hours later by setting an alarm clock requiring the patient to wake up in the middle of the night, every night, for the entire course of treatment, to address this chronic condition. By contrast, LUMRYZ consists of an innovative formulation of both immediate-release and "delayed-release" particles; it thus allows a single dose once at bedtime, providing the opportunity for a complete night of uninterrupted sleep.

On May 1, 2023, the U.S. Food and Drug Administration ("FDA") approved Avadel's New Drug Application ("NDA") for LUMRYZ, finding that once-nightly LUMRYZ is "clinically superior" to Jazz's twice-nightly drugs and therefore that Jazz's term of purported statutory exclusivity did not block the approval of the LUMRYZ NDA. This was not a hard call: FDA consulted with two of its board-certified sleep experts, who explained the overwhelming benefits of obtaining a full night's sleep, without setting an alarm to wake up in the middle of the night.

---

[1] Since January 2023, Jazz has authorized a third party, Hikma, to market an "authorized generic" version of Xyrem manufactured by Jazz. An "authorized generic" is the same drug as the name-brand drug, and is marketed under the same NDA, by agreement with the manufacturer.

Not surprisingly, these experts concluded that allowing patients suffering from narcolepsy, a sleep disorder, to sleep through the night without a forced awakening to take a second dose would be materially beneficial, and, thus, a major contribution to patient care.

The thrust of Jazz's Complaint is that its twice-nightly Xywav drug is always preferable to once-nightly LUMRYZ because Xywav has lower sodium levels than LUMRYZ, even though Xywav patients must be awoken in the middle of the night every night to take a second dose. But FDA's medical experts disagreed with Jazz for reasons thoroughly described in the record. FDA considered the asserted benefits of Xywav's lower sodium content, but concluded that those asserted benefits were outweighed by patients' enhanced ability to sleep through the night with LUMRYZ and all of its accompanying benefits, especially given that sodium-sensitive patients can modify their diet to address any perceived sodium-related risk. FDA further found:

- The "longer periods between doses" for treatment with LUMRYZ are "significantly more convenient for patients" and provide "an advancement in the ease of drug administration, and a reduction in treatment burden;"

- With respect to Jazz's Xyrem and Xywav, "having to wake up to take a second dose is antithetical to oxybate's goal of improving sleep;"

- "Disrupting sleep" by setting an alarm take a second dose of Xyrem and Xywav in the middle of the night "contributes to chronic sleep loss;"

- Such chronic sleep loss "is well known to cause reduced performance, increased risk for accidents and death, and detrimental effects on both psychological and physical health."

This disruption to sleep architecture and chronic sleep loss occur "in the context of a chronic neurological condition," narcolepsy, that cannot be cured—only its symptoms treated—and thus

"requires potentially lifelong treatment" with nightly wakings to take Jazz's drugs, every night, potentially for the rest of the patient's life.

But incredibly, Jazz maintains here that once-nightly LUMRYZ is *not* clinically superior to Jazz's twice-nightly drugs, and that LUMRYZ (and any other potential competitor oxybate drugs) cannot be approved to treat patients with narcolepsy.  Jazz takes that position even though LUMRYZ has already been on the market for several weeks, is currently being utilized by patients, and is already changing their lives for the better.  Patients have described the difference between Jazz's twice-nightly products and once-nightly LUMRYZ as "life-changing," with once-nightly dosing on LUMRYZ allowing patients to "safely drive and participate more fully in normal activities" and obtain "better and more consistent control over [their] symptoms."

Jazz has been trying for years to keep Avadel's drug off of the market, and is currently in the midst of an investigation by the U.S. Attorney's Office for the District of Massachusetts into Jazz's anticompetitive conduct.[2]  The *New York Times* has reported at length how Jazz has "inappropriately" abused its patents through the FDA drug approval process to "delay competition," amounting to "an egregious example of how drug companies exploit the patent system to shield their products from competition for as long as possible."  Rebecca Robbins, *A Drug Company Exploited a Safety Requirement to Make Money*, N.Y. Times, Feb. 28, 2023, at 1–3.  Some of Jazz's prior efforts have already been held unlawful and resulted in significant delay in the LUMRYZ's approval.  *See Jazz v. Avadel*, 60 F.4th 1373, 1375–76 (Fed. Cir. 2023) (requiring Jazz to cease improperly using a patent to foreclose approval of LUMRYZ).[3]  And now,

---

[2] *See* Jazz Pharms. Public Ltd., Quarterly Report (Form 10-Q), 72 (Aug. 3, 2022).

[3] In November 2022, the Federal Trade Commission voted unanimously to file an amicus brief in Avadel's (eventually successfully) patent claim against Jazz (on a different issue than this case), explaining that if—as the Federal Circuit later held—Jazz improperly listed the patent at issue, "it

Jazz is asking this Court to take an FDA-approved drug away from patients who need it—not based on any established FDA legal violation, but on theories unsupported by statutory or regulatory text or caselaw.

Specifically, Jazz contends that it holds orphan drug exclusivity ("ODE") for Xywav that blocks approval of LUMRYZ.  ODE is a marketing exclusivity under the Federal Food, Drug, and Cosmetic Act ("FDCA") available for some drugs developed to treat rare diseases affecting 200,000 people or fewer nationwide. 21 U.S.C. § 360cc(a).  If a drug is granted ODE, it will block approval of the "same drug," in certain circumstances, for a seven-year period.  There are numerous limitations on ODE, however, including that ODE will not block a later orphan drug that is "clinically superior" to an existing orphan drug—that is, the later drug offers greater efficacy, greater safety, or a major contribution to patient care.  21 U.S.C. § 360cc(a), (c)-(d); 21 C.F.R. § 316.3(b)(14)(i).  Jazz's Complaint contains a single claim, that FDA exceeded its authority and erred in its exercise of scientific judgment when it concluded that LUMRYZ is "clinically superior" to Jazz's Xywav drug, which had the effect of allowing LUMRYZ to be marketed immediately rather than in 2027 at the end of Jazz's purported statutory period of ODE under the FDCA.  Accordingly, as relief, Jazz contends that FDA's "approval of Avadel's application [for LUMRYZ] must be held unlawful and set aside," such that Avadel could no longer market LUMRYZ until July 2027.  Dkt. 1, Compl. ¶ 249.

---

appears to be causing significant harm to competition." *See* FTC Amicus Br. at 15, *Jazz Pharm., Inc. v. Avadel CNS Pharm., Inc.*, No. 21-00691 (D. Del. Nov. 10, 2022), ECF No. 222-3.  And as the FTC noted in its accompanying press release, its "Amicus Brief Challenges Abuse of FDA 'Orange Book' Listing Procedures to Block Drug Competition."  FTC, Press Release (Nov. 10, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/11/ftc-amicus-brief-challenges-abuse-fda-orange-book-listing-procedures-block-drug-competition.

As is evident from this short summary, the entirety of Jazz's single claim at issue in this case directly relates to Avadel's LUMRYZ product, and to Avadel's right to market that drug. Under these circumstances, there is no genuine question about whether Avadel satisfies this Circuit's standard for intervention as of right under Federal Rule of Civil Procedure 24(a). *See, e.g.*, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1075 (D.C. Cir. 1998) (reversing denial of intervention in a case involving marketing exclusivity). Jazz's claim clearly implicates Avadel's interests and merits its intervention here. As set forth below, Avadel's motion is timely, and its interest in its right to sell LUMRYZ clearly qualifies as "a legally protected interest" that Jazz's suit, if successful, would impair or impede. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). Further, it is well established that in these circumstances, the government cannot adequately represent Avadel's interest. *Id.* at 321.

Alternatively, Avadel requests permissive intervention under Federal Rule of Civil Procedure 24(b), because its defenses and the government's defenses share common questions of law and fact, and Avadel's intervention three business days after the Complaint was filed will result in no delay or prejudice to the existing parties.

Counsel for Avadel has conferred with counsel for Defendants Xavier Becerra, the U.S. Department of Health and Human Services, Robert Califf, and the U.S. Food and Drug Administration and counsel for Plaintiff Jazz Pharmaceuticals, Inc. pursuant to Local Civil Rule 7(m). The Federal Defendants consent to Avadel's motion and Jazz does not oppose it.

## BACKGROUND

The FDCA generally prohibits the introduction of any "new drug" into interstate commerce without FDA approval. 21 U.S.C. § 355(a). Typically, drug manufacturers seek FDA approval through an NDA under Section 505(b)(1) of the FDCA. Such an NDA often contains, among

other things, "full reports of investigations" demonstrating that the drug product is both safe and effective. *Id.* § 355(b).

The Hatch-Waxman Amendments of 1984 added other, more streamlined pathways to drug approval, including a Section 505(b)(2) application. *Id.* § 355(b)(2). A Section 505(b)(2) applicant can rely on prior investigations that "were not conducted by or for the applicant" to obtain approval of a drug. *Id.* Such an application is typically used for drugs that are based on the same active ingredient as—but which are not identical to—a previously approved drug. *See id.*

Avadel submitted its NDA for LUMRYZ as a Section 505(b)(2) application. According to Jazz, Avadel's Section 505(b)(2) application also implicated a separate provision of the Orphan Drug Act, which provides a seven-year monopoly—orphan drug exclusivity—to drug manufacturers who develop treatments for rare diseases or conditions that would otherwise be "orphaned" by the lack of manufacturer attention. 21 U.S.C. §§ 360bb(a), 360cc(a). Once a manufacturer develops and obtains approval for an orphan drug, FDA cannot approve applications by other companies to market the (1) "same drug" for the (2) "same disease or condition" for seven years. *Id.* § 360cc(a); *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 325 (D.C. Cir. 2020).

Although ODE is designed to incentivize the development of new, innovative drugs for rare diseases, if it were inviolable, it could prevent patient access to new treatments that use the same active ingredient to treat the same disease in a better way. So, Congress adopted a limitation to ODE. If a manufacturer seeking approval of a drug that is "otherwise the same" as an already approved or licensed drug can demonstrate that the new drug is "clinically superior" to the existing drug, then the existing drug's period of ODE does not bar approval, and the new drug receives its own period of ODE. *See* 21 U.S.C. §§ 360cc(a), (c)-(d); 21 C.F.R. § 316.3(b)(14)(i).

A drug is deemed clinically superior to an existing, otherwise "same" drug if it "provides a significant therapeutic advantage over and above" the existing drug "in terms of greater efficacy, greater safety, or by providing a major contribution to patient care." 21 U.S.C. § 360cc(c)(2). In short, upon a finding of clinical superiority, a new drug can "break through" the first drug's ODE; the new drug is no longer deemed the "same drug" as the first; and the new drug is entitled not just to immediate approval, but also to its own period of ODE. *Eagle Pharms*, 952 F.3d at 326; 21 U.S.C. § 360cc(a), (c)–(d); 21 C.F.R. § 316.3(b)(14)(i).

Jazz has leveraged multiple periods of ODE to enjoy a decades-long monopoly on oxybate treatments for patients suffering from narcolepsy. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-2966, 2021 WL 3612497, at *1–2 (N.D. Cal. Aug. 13, 2021) (documenting this history). Most recently, in 2018, Jazz obtained approval and a purported *third* seven-year period of exclusivity for Xyrem by obtaining approval for its use in pediatric patients 7 to 16 years of age. Then, in July 2020, Jazz received approval for a its newest oxybate product, Xywav, for the treatment of cataplexy and excessive daytime sleepiness in patients 7 years of age and older with narcolepsy. In June 2021, FDA determined that Xywav's lower sodium content made it "clinically superior" to Jazz's initial product, Xyrem, so as to purportedly warrant a seven-year period of ODE for Xywav.

Until LUMRYZ's approval, Xyrem and Xywav were the only oxybate products approved to be marketed in the United States to treat narcolepsy. Xyrem and Xywav, however, have significant limitations that affect patient experience. Most significant, both products are twice-nightly formulations; they require patients to take one dose at bedtime, then set an alarm for 2.5 to 4 hours later to wake up and take the second dose in the middle of the night.

7

LUMRYZ solves that problem by delaying the release of some of its drug load, allowing for once-nightly dosing at bedtime. In 2018, Avadel obtained orphan drug designation for LUMRYZ for the treatment of narcolepsy symptoms based on a plausible hypothesis of clinical superiority over Xyrem. Avadel submitted its NDA for LUMRYZ in December 2020, including demonstrations of the clinical superiority of LUMRYZ.

FDA's approval of LUMRYZ was then delayed by a dispute over an unrelated Jazz patent, purportedly covering Jazz's system for drug distribution, that Jazz successfully used to temporarily block approval of LUMRYZ. *See Jazz Pharms., Inc.*, 60 F.4th at 1375–79. The District of Delaware ordered Jazz to remove the patent from FDA's Orange Book, because Jazz's listing of the patent violated federal law. *Id.* at 1377–79. The Federal Circuit affirmed that decision. *Id.* at 1381–82. With that barrier resolved, FDA approved Avadel's NDA on May 1, 2023, and granted it orphan drug exclusivity based on its finding that LUMRYZ is clinically superior to Xyrem and Xywav.

On June 22, 2023, Jazz filed this case against FDA challenging the LUMRYZ approval. Jazz raises one claim that will be shown to be meritless once the administrative record is produced and merits briefing is concluded. Specifically, Jazz claims that Xywav's orphan drug exclusivity should have blocked the approval of the LUMRYZ NDA. To succeed on that claim, however, Jazz will need to show that FDA's finding that LUMRYZ is clinically superior to Xywav was contrary to law or arbitrary and capricious. Jazz will not be able to do that. FDA's clinical-superiority analysis lies at the core of the agency's discretion to make decisions based on its scientific expertise and is due significant deference. FDA exercised its substantial discretion reasonably, and its call was not difficult. As FDA found, unlike Xywav, LUMRYZ "provides an opportunity for narcolepsy patients to achieve normal sleep architecture," which is relevant

8

because the "purpose of oxybate therapy is to improve sleep consolidation." This finding, along with FDA's observation that "longer periods between doses" are "significantly more convenient for patients" and provide "an advancement in the ease of drug administration, and a reduction in treatment burden," amply support FDA's finding that LUMRYZ "provides a significant therapeutic advantage" over Jazz's Xywav drug. *See* 21 U.S.C. § 360cc(a), (c)-(d).

Jazz's other arguments regarding ODE are likewise unavailing. For example, Jazz's assertion that its ODE for Xywav blocks *any* oxybate-based treatment for narcolepsy symptoms until 2027, irrespective of whether that drug is "clinically superior" to Jazz's drugs, plainly misreads the relevant statute, regulations, and case law, which make clear that a subsequent drug that is "clinically superior to the first drug" with ODE "will not be considered to be the same drug" as the first and thus its approval will not be blocked by ODE. 21 C.F.R. § 316.3(b)(14)(i); *see also* 21 U.S.C. § 360cc(a), (c)-(d). Nor did FDA err in concluding that the significant, demonstrable benefits of LUMRYZ outweighed the speculative safety risks that Jazz identifies in its Complaint.

Avadel's intervention is warranted so that Avadel can defend its significant, legally protected interest in FDA's approval of LUMRYZ and respond to Jazz's claims, which seek to impair that interest.

## ARGUMENT

### I.   AVADEL HAS A RIGHT TO INTERVENE UNDER RULE 24(A)

Under Rule 24(a),

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In this Circuit, intervention as of right should be granted where the movant establishes "1) timeliness of the application to intervene; 2) a legally protected interest;

3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads,* 788 F.3d at 320. The movant must also have standing. *Id.* at 316. Avadel easily satisfies each of those requirements.

### A. Avadel's Motion Is Timely

"[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Timeliness "is 'to be judged in consideration of all the circumstances,'" including the time elapsed since the suit began. *Id.* (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)). Here, Jazz filed its Complaint on June 22, 2023, and Avadel is filing this motion to intervene three business days later. There is no risk of prejudice to the existing parties, who have not filed any substantive pleadings except for Jazz's Complaint. It is difficult to imagine a more timely intervention. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (holding that a motion to intervene was timely where it was filed "less than two months after the plaintiffs filed their complaint"); *Mova*, 140 F.3d at 1076 (similar); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (similar).

### B. Avadel Has a Legally Protected Interest

As set forth above, this case principally addresses FDA's approval of Avadel's drug, which is the company's sole source of commercial revenue. There should be no question that Avadel has significant, legally recognized interests in defending its NDA approval for LUMRYZ. Indeed, courts have recognized that drug companies have a valid interest in intervening in suits where a competitor threatens the would-be-intervenor's ability to market and sell a drug. *See, e.g.*, *Mova*, 140 F.3d at 1074; *Mylan Pharms. Inc. v. FDA*, 789 F. Supp. 2d 1, 8 (D.D.C. 2011) ("[A]n ANDA applicant has a legally protected interest in the FDA's consideration of its own ANDA, and it

10

might suffer harm as a result of the FDA's denial or neglect."). In light of this established law, when Avadel brought an APA suit against FDA last year over a separate issue, Jazz sought to intervene, and Avadel did not oppose. Unopposed Mot. to Intervene by Jazz Pharms., Inc., *Avadel CNS Pharms., LLC v. Becerra*, No. 22-cv-2159 (D.D.C. July 27, 2022), ECF No. 14; *see also* Order Granting Unopposed Mot. To Intervene, *Avadel CNS Pharms., LLC v. Becerra*, No. 22-cv-2159 (July 28, 2022), ECF No. 18.

Moreover, establishing Article III standing itself satisfies the requirement of a legally protected interest for purposes of the intervention inquiry, *see Crossroads*, 788 F.3d at 320, and Avadel has standing, as set forth below, *see infra* Section I.E.

### C. This Action May Impair Avadel's Interest

In evaluating the impairment prong, the Court looks "to the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (quoting *NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). Here, if Avadel's motion is denied and Jazz succeeds in the case, Avadel would lose its right to sell LUMRYZ. *See Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) ("Simply put, a decision in Plaintiffs' favor in this case would impair Putative Intervenors' interests because Plaintiffs are attacking a decision that was favorable to the Putative Intervenor . . . ."). That would cause a loss of significant profits and deprive Avadel of the opportunity to recoup its massive investment in developing LUMRYZ by continuing to market its clinically superior product. In sum, Jazz seeks to potentially have Avadel wait until the expiration of Jazz's ODE in 2027, and foreclose any potential market share or revenue opportunity for LUMRYZ until then. *See, e.g.*, *Mova*, 140 F.3d at 1076 (finding a would-be-intervenor's interests were at risk when there was a chance of lost market share). Both the D.C. Circuit and this Court have recognized that such economic harms from the reversal of a favorable agency action are an impairment of a proposed intervenor's interest and justify intervention. *See id.* (holding that a

11

drug manufacturer's interest would be impaired by a loss of market share); *see also Fund for Animals*, 322 F.3d at 735 (finding impairment of a proposed intervenor's interest because "its loss of revenues during any interim period would be substantial and likely irreparable"); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14–15 (D.D.C. 2010) ("Simply put, the Bureau's decision below was favorable to Antelope, and the present action is a direct attack on that decision" and may impact its "ability to remain competitive." (citing *Fund for Animals*, 322 F.3d at 735)); *Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (finding impairment based on "the imminent threat of lost earnings").

### D. No Existing Party Adequately Represents Avadel's Interest

The burden of establishing inadequate representation "is not onerous," and "[t]he applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

That low standard is clearly satisfied here because government agencies often do not adequately represent private parties' interests, as the D.C. Circuit has recognized:

> A government entity . . . is charged by law with representing the public interest of its citizens. [The proposed intervenor], on the other hand, is seeking to protect a more narrow and "parochial" financial interest not shared by the citizens . . . . The [government] would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest. Since [the proposed intervenor's] interest cannot be subsumed within the shared interest of the citizens [at large], no presumption exists that the [government] will adequately represent its interests.

*Dimond*, 792 F.2d at 192–93 (citation omitted); *see also Crossroads*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *Fund For*

*Animals*, 322 F.3d at 735–37 ("For just these reasons, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.").

Here, FDA may have interests that go beyond this suit and may influence the defenses and arguments it asserts. And in the event of an adverse decision, Avadel would have no other way to participate to defend its interests if the FDA decided not to appeal. That is not an imagined problem: FDA has previously declined to appeal orphan drug exclusivity decisions that adversely affected a pharmaceutical company in order to pursue a different agency goal. *See, e.g.*, *Depomed, Inc. v. HHS*, 66 F. Supp. 3d 217 (D.D.C. 2014).

In sum, because this motion to intervene is timely, and Avadel has significant protectable interests in the case that are not adequately represented by the existing defendants, Avadel is entitled to intervene as of right.

### E. Avadel Has Standing

"The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316. Avadel easily satisfies that standard here. If Jazz is successful in this suit, Avadel will lose its NDA approval for LUMRYZ and with that, all market share and profits that would result from sales of the drug product. That is sufficient to show injury in fact. *See Teva Pharms. USA, Inc. v. FDA*, 514 F. Supp. 3d 66, 92 (D.D.C. 2020) (holding that a determination that deprives a drug manufacturer of sales of a drug is a "competitive and economic harm" that provides standing); *see also Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."); *Fund for Animals*, 322 F.3d at 733 (holding that a "threatened loss" in the event of an adverse ruling sufficed to confer standing). And it is plainly

traceable to the relief Jazz seeks, vacating and setting aside the LUMRYZ NDA approval. As such, Avadel has established sufficient standing to bring this motion to intervene.

## II.   ALTERNATIVELY, PERMISSIVE INTERVENTION IS PROPER UNDER RULE 24(B)

Under Federal Rule of Civil Procedure 24(b), permissive intervention is proper where the movant "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3). Here, Avadel seeks to join FDA's defense of its decision directly benefiting Avadel and will present arguments that arise from the same facts. *See Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) ("The movants seek to defend the Department's decision . . . . That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B)."). Further, intervention will result in no delay or prejudice at this early stage, as the litigation began only three business days ago. Thus, the Court should allow permissive intervention under Rule 24(b) in the event that it does not allow intervention of right under Rule 24(a).

## CONCLUSION

For the foregoing reasons, Avadel's motion to intervene as of right should be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 27, 2023 | /s Philip J. Perry<br>Philip J. Perry (DC Bar No. 434278)<br>Andrew D. Prins (DC Bar No. 998490)<br>John R. Manthei (DC Bar No. 447123)<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Tel: (202) 637-2200<br>Fax: (202) 637-2201<br>Email: philip.perry@lw.com<br><br>Nicholas L. Schlossman (DC Bar No. 1029362)<br>LATHAM & WATKINS LLP<br>300 Colorado Street, Suite 2400<br>Austin, TX 78701<br>Tel:  (737) 910 7300<br>Fax:  (737) 910.7301<br><br>*Attorneys for Proposed Defendant-Intervenor Avadel CNS Pharmaceuticals, LLC* |

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all registered parties through the Court's CM/ECF system and mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

Xavier Becerra
Secretary of Health and Human Services
200 Independence Avenue, SW
Washington, DC 20201

U.S. Department of Health And Human Services
200 Independence Avenue, SW
Washington, DC 20201

Robert Califf,
Commissioner of Food and Drugs
10903 New Hampshire Avenue
Silver Spring, MD 20993

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993

Noah T. Katzen
U.S. Department Of Justice
450 5th St., N.W.
Washington, DC 20530

Isaac Belfer
U.S. Department Of Justice
P.O. Box 386
Washington, DC 20044-0386

Merrick Garland
United States Attorney General
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Civil Process Clerk
U.S. Attorney's Office
555 Fourth Street NW
Washington, D.C. 20530

Kwaku A. Akowuah
Sean C. Griffin
Christopher S. Ross
Peter A. Bruland
Sidley Austin LLP
1501 K Street N.W.
Washington, DC 20005

*/s/Philip J. Perry*
Philip J. Perry