# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., Plaintiff, <br><br> v. <br><br> XAVIER BECERRA, *et al.*,  Defendants, <br><br> and <br><br> AVADEL CNS PHARMACEUTICALS, LLC, Intervenor-Defendant. | Case No. 1:23-cv-01819-APM |

**Federal Defendants' Memorandum in Support of Their Motion to Strike the Declaration of Sean C. Griffin and Attachments and Exhibits Thereto, and in Opposition to Jazz's Motion for Judicial Notice**

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human
  Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

LEAH A. EDELMAN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA L. LISKAMM
Director

JAMES W. HARLOW
Acting Assistant Director

NOAH T. KATZEN
ISAAC C. BELFER
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 305-2428 (Katzen)
(202) 305-7134 (Belfer)
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov
Isaac.C.Belfer@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 4

I.     The Court should strike the Griffin Declaration, including all attachments and exhibits ........................................................................................................... 5

    A.    Extra-record materials are irrelevant to judicial review under the APA .......... 6

    B.    Jazz's extra-record documents are also irrelevant on their face ........................ 9

    C.    The extra-record documents in Categories 2 and 3 and Exhibit 10 are duplicative of materials in the administrative record ....................................... 10

    D.    Consideration of these documents would prejudice Federal Defendants ...... 11

II.    The Court should deny Jazz's motion for judicial notice .................................. 13

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adamski v. McHugh*,
  304 F. Supp. 3d  (D.D.C. 2015).........................................................................12

*Am. Rivers v. U.S. Army Corps of Engineers*,
  271 F. Supp. 2d 230 (D.D.C. 2003)....................................................................16

*Camp v. Pitts*,
  411 U.S. 138 (1973)..........................................................................................6, 8

*Carr v. Saul*,
  141 S. Ct. 1352 (2021).........................................................................................12

*City of Dania Beach v. FAA*,
  628 F.3d 581 (D.C. Cir. 2010).....................................................................7, 8, 15

*Depomed, Inc. v. U.S. Department of Health and Human Services*,
  66 F. Supp. 3d 217 (D.D.C. 2014)......................................................................10

*Dist. Hosp. Partners, L.P. v. Sebelius*,
  971 F. Supp. 2d 15 (D.D.C. 2013)...........................................................14, 15, 17

*Esch v. Yeutter*,
  876 F.2d 976 (D.C. Cir. 1989)..............................................................................16

*Ethyl Corp. v. EPA*,
  541 F.2d 1 (D.C. Cir. 1976)..................................................................................12

*Garnett v. Zeilinger*,
  313 F. Supp. 3d 147 (D.D.C. 2018)......................................................................17

*Gration v. Islamic Republic of Iran*,
  No. 21-CV-1859 (BAH), 2023 WL 5221955 (D.D.C. Aug. 15, 2023) ..........14, 16

*Hill Dermaceuticals, Inc. v. FDA*,
  709 F.3d 44 (D.C. Cir. 2013)......................................................................4, 6, 7, 8

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
  224 F.R.D. 261 (D.D.C. 2004).......................................................................5, 6, 8

*Kelleher v. Dream Catcher, L.L.C.*,
  221 F. Supp. 3d 157 (D.D.C. 2016)......................................................................17

*Larouche v. Dep't of the Treasury*,
  No. CIV.A.91-1655 (RCL), 2000 WL 805214 (D.D.C. Mar. 31, 2000) ...........6, 8

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009)............................................................................... 14, 15

*Las Americas Immigrant Advoc. Ctr. v. Wolf,*
    507 F. Supp. 3d 1 (D.D.C. 2020)............................................................................ 7

*\*Level the Playing Field v. Fed. Election Comm'n,*
    381 F. Supp. 3d 78 (D.D.C. 2019) ........................................................ 7, 8, 14, 17

*McCarthy v. Madigan,*
    503 U.S. 140 (1992)................................................................................................ 12

*McKart v. United States,*
    395 U.S. 185 (1969)................................................................................................ 12

*Oceana, Inc. v. Ross,*
    920 F.3d 855 (D.C. Cir. 2019)................................................................................ 4

*Pharmaceutical Research and Manufacturers of America v. U.S. Department of Health and
    Human Services,*
    43 F. Supp. 3d 28 (D.D.C. 2014)...................................................................... 16, 17

*Reynolds v. Medtronic, Inc.,*
    No. 3:20-CV-403, 2021 WL 1854968 (S.D. Ohio May 10, 2021) .................... 15, 17

*Riffin v. Surface Transportation Bd.,*
    No. 16-1147, 2016 WL 6915552 (D.C. Cir. Oct. 6, 2016)........................... 14, 15, 17

*Sammons v. Regence Bluecross Blueshield of Oregon,*
    No. 3:15-CV-01703-SI, 2016 WL 1171019 (D. Or. Mar. 23, 2016) ..................... 10

*\*Silver State Land, LLC v. Beaudreau,*
    59 F. Supp. 3d 158 (D.D.C. 2014)................................................................ 14, 15, 16, 17

*Stand Up for California! v. U.S. Dep't of Interior,*
    71 F. Supp. 3d 109 (D.D.C. 2014).......................................................................... 9

*Swisher Int'l, Inc. v. FDA,*
    No. 22-CV-954 (CRC), 2023 WL 6460028 (D.D.C. Oct. 4, 2023) ................... 4, 6, 7

*\*Theodore Roosevelt Conservation P'ship v. Salazar,*
    616 F.3d 497 (D.C. Cir. 2010)............................................................................. 7, 8

*United States v. L.A. Tucker Truck Lines, Inc.,*
    344 U.S. 33 (1952)................................................................................................. 12

*Video Gaming Techs., Inc. v. Castle Hill Studios LLC,*
    No. 17-CV-454-GKF-JFJ, 2018 WL 284991 (N.D. Okla. Jan. 3, 2018) ............... 15

*\*Wasserman v. Rodacker,*
    No. CIV.A.06 1005 RWR, 2007 WL 274748 (D.D.C. Jan. 29, 2007)............... 5, 6, 8

*Western Watersheds Project v. Bernhardt*,
   468 F. Supp. 3d 29 (D.D.C. 2020) .................................................................... 16

*Whiting v. AARP*,
   637 F.3d 355 (D.C. Cir. 2011) ................................................................... 14, 15

**Statutes**

*5 U.S.C. §
   706 ......................................................................................................... 4, 6, 8

**Rules**

*Fed. R. Civ. P. 12(f) ........................................................................................... 8
Fed. R. Civ. P. 56 ................................................................................................ 5
*Fed. R. Civ. P. 56(c)(4) ...................................................................................... 5
*Fed. R. Evid. 201 ......................................................................................... 14, 16
Fed. R. Evid. 201(a) ...................................................................................... 13, 16
Fed. R. Evid. 201(b) ........................................................................................... 13
Fed. R. Evid. 401 ............................................................................................. 5, 8
Fed. R. Evid. 402 ................................................................................................ 5

**Regulations**

21 C.F.R. §
   10.25(a) ...................................................................................................... 12, 13
   10.30 ............................................................................................................... 13
   10.45(b) .......................................................................................................... 12
   10.45(f) ........................................................................................................... 12

**INTRODUCTION**

This is an Administrative Procedure Act (APA) case. Judicial review of APA claims is limited to the administrative record, subject only to a few narrow exceptions. A party who believes that the record is incomplete or that the Court should consider extra-record material may move to complete or supplement the administrative record. Plaintiff Jazz Pharmaceuticals, Inc. (Jazz) filed no such motion. Instead, the company attempts a brazen end-run around the proper procedures and the rule of record review.

In support of its Motion for Summary Judgment, Jazz submitted a lengthy counsel declaration, the Declaration of Sean C. Griffin (Griffin Declaration), along with two attachments and 39 exhibits. None of these materials are in the administrative record; they are thus irrelevant to judicial review of Jazz's APA claim. They also prejudice Federal Defendants because Jazz uses them to portray Federal Defendants in a false light and to evade the requirement that issues be presented first to the agency before raising them in court. The Court should strike the Griffin Declaration, including its attachments and exhibits, as a procedurally improper attempt to introduce extra-record evidence.

Jazz also requests the Court take judicial notice of numerous extra-record documents. But the rule of record review is not so easily evaded. Courts hold litigants trying to introduce extra-record evidence via judicial notice to the stringent standard for supplementing the administrative record. Jazz does not argue the documents for which it seeks judicial notice meet that standard, and indeed they do not. The Court therefore should deny Jazz's motion for judicial notice.

Because Jazz's Motion for Summary Judgment relies extensively on the Griffin Declaration and its attachments and exhibits, the Court should order Jazz to refile its motion without reliance on these improper documents.

BACKGROUND

On June 22, 2023, Jazz filed its Complaint, asserting a single claim for relief: that the U.S. Food and Drug Administration (FDA) violated the APA by approving Lumryz on May 1, 2023. ECF No. 1 (Compl.) ¶¶ 242–49; *see* ECF No. 34-2 (MSJ) 19–44. On August 11, 2023, pursuant to the schedule proposed by the parties and adopted by the Court, ECF Nos. 31, 33, Federal Defendants served the administrative record, totaling 2271 pages, ECF No. 32. On September 15, Jazz moved for summary judgment. In support of that motion, Jazz submitted the 13-page Griffin Declaration. ECF No. 35 (Griffin Decl.). Appended to the Griffin Declaration were 41 documents: Attachments 1 and 2, totaling 45 pages, Griffin Decl. at 14–58,[1] and Exhibits 1 to 39, totaling 329 pages, ECF No. 36, none of which are in the administrative record.

Paragraphs 3 to 14 of the Griffin Declaration discuss several Freedom of Information Act (FOIA) requests that Jazz submitted to FDA about Lumryz's approval. Attachment 1 to the Griffin Declaration, in turn, contains correspondence between Jazz and FDA about the FOIA requests. Three of the documents Jazz requested were released to Jazz under FOIA, Griffin Decl. ¶¶ 4, 8, 11, and are contained in the administrative record in this case, AR471–82; AR504–12; AR513–21. Otherwise, Jazz's

---

[1] Citations to pages of the Griffin Declaration refer to the ECF-generated page numbers.

FOIA requests, Griffin Decl. ¶¶ 12–13, remain pending and are not the subject of this lawsuit.

Paragraphs 15 to 21 of the Griffin Declaration recount counsel's discussions about the contents of the administrative record. Attachment 2 to the Griffin Declaration comprises the related correspondence. Although Jazz threatened motion practice to "complete the record," Griffin Decl. at 51, it moved for summary judgment on the administrative record compiled by FDA, which it "believes . . . more than sufficient" for APA review. MSJ 15 n.6.

Paragraphs 22 and 23 of the Griffin Declaration relate to a chart prepared by Jazz's counsel, which summarizes drug approval information from FDA's online database, Drugs@FDA.

The remainder of the Griffin Declaration identifies the 39 attached exhibits. These exhibits fall into one of five categories:

- Category 1: FDA correspondence and memoranda relating to drugs other than Lumryz (Exs. 1, 9, 10, 26, 27, 38);[2]

- Category 2: FDA publications about sodium (Exs. 3, 11–14);

- Category 3: Scientific publications (Exs. 15–25, 28–37, 39);

- Category 4: A blog post (Ex. 2);

- Category 5: FDA documents relating to the agency's procedure and organization (Exs. 4–8).

---

[2] "Ex." refers to the Griffin Declaration exhibits, which are filed at ECF No. 36.

Jazz requests judicial notice of counsel's chart of drug approval information, *see* Griffin Decl. ¶¶ 22–23, as well as the exhibits in Categories 1, 2, and 5, *see* Mot. for Judicial Notice, ECF No. 37, at 2.

## ARGUMENT

It is black-letter law that, with only very narrow exceptions, judicial review in an APA case is limited to the administrative record, which "consists of all documents and materials that the agency directly or indirectly considered." *Swisher Int'l, Inc. v. FDA*, No. 22-CV-954 (CRC), 2023 WL 6460028, at *3 (D.D.C. Oct. 4, 2023) (quotations omitted); *see Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam); 5 U.S.C. § 706. An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record." *Swisher Int'l*, 2023 WL 6460028, at *3 (quotations omitted); *see Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). If a party believes that the record designated by the agency is incomplete because it is missing information that was directly or indirectly considered by the agency, the party may move to "complete" the record. *Swisher Int'l*, 2023 WL 6460028, at *3–4. If a party does not dispute the completeness of the record but seeks to introduce information that was not considered by the agency, it may move to "supplement" the record. *Id.*

Jazz has taken neither of these paths. Rather, it tries to circumvent the entire procedural framework by filing a declaration of counsel with two attachments and 39 exhibits, none of which are in the administrative record. Because this is procedurally improper, and because the documents Jazz submitted are irrelevant to Jazz's APA claim, the Court should strike those documents.

The Court should also deny Jazz's motion for judicial notice of a subset of the documents. In an APA case, courts allow judicial notice of extra-record adjudicative facts only when the plaintiff meets the standard for supplementing the record. That limitation is intended to prevent the very end-run that Jazz attempts here. Because Jazz has not shown that any of its documents meet the requirements for judicial notice, its motion should be denied.

### I.   The Court should strike the Griffin Declaration, including all attachments and exhibits

Under Federal Rule of Civil Procedure 56, "[a]n affidavit or declaration used to support or oppose" a motion for summary judgment must, among other things, "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). A declaration may "be stricken for failing to satisfy" that requirement. *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 224 F.R.D. 261, 263 (D.D.C. 2004); *see Wasserman v. Rodacker*, No. CIV.A.06 1005 RWR, 2007 WL 274748, at *2 (D.D.C. Jan. 29, 2007). Because "[i]rrelevant evidence is not admissible," Fed. R. Evid. 402; *see* Fed. R. Evid. 401, courts strike declarations that contain irrelevant information, *see, e.g.*, *Jud. Watch*, 224 F.R.D. at 264 (striking immaterial information in declaration submitted in support of summary judgment motion); *see also Wasserman*, 2007 WL 274748, at *2 ("Because defendants have shown no relevant purpose for using exhibits 3 through 8 at this [summary judgment] stage in the litigation, those exhibits will be stricken.").

"Though the power to strike exhibits from motions for summary judgment derives from Rule 56, the framework of Rule 12(f), which allows pleadings to be stricken, is

instructive." *Wasserman*, 2007 WL 274748, at *2; *see also Jud. Watch.*, 224 F.R.D. at 264.

Courts have invoked Rule 12(f) in the summary judgment context because "a motion to

strike is the only method of attack against a defective affidavit" and because, "[a]s a

general rule, the court cannot consider inadmissible hearsay or incompetent evidence."

*Larouche v. Dep't of the Treasury*, No. CIV.A.91-1655 (RCL), 2000 WL 805214, at *13–14

(D.D.C. Mar. 31, 2000), *amended in part sub nom. LaRouche v. U.S. Dep't of Treasury*, No.

CIV. A. 91-1655(RCL), 2000 WL 33122742 (D.D.C. Nov. 3, 2000). Rule 12(f) provides that

"[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or

scandalous matter." "A matter is immaterial or impertinent when it is not relevant to

the resolution of the issue at hand." *Jud. Watch*, 224 F.R.D. at 263.

### A.  Extra-record materials are irrelevant to judicial review under the APA

Documents that are not part of the administrative record are irrelevant to APA

claims because "the focal point for judicial review should be the administrative record

already in existence, not some new record made initially in the reviewing court." *Camp

v. Pitts*, 411 U.S. 138, 142 (1973); *see* 5 U.S.C. § 706. Indeed, "it is black-letter

administrative law that in an APA case, a reviewing court should have before it neither

more nor less information than did the agency when it made its decision." *Hill

Dermaceuticals*, 709 F.3d at 47.

If an APA plaintiff wants a court to consider extra-record documents, it must file a

motion to supplement the record. *See Swisher Int'l*, 2023 WL 6460028, at *3–4. And courts

"do not allow parties to supplement the record unless they can demonstrate unusual

circumstances justifying a departure from th[e] general rule" that judicial review is

limited to the administrative record. *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quotations omitted). These "narrow" circumstances are cabined to "gross procedural deficiencies," *Hill Dermaceuticals*, 709 F.3d at 47, such as "when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review," *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (quotations omitted).

When plaintiffs attempt to introduce extra-record evidence without meeting the standard for supplementing the record, courts strike those materials. *See, e.g.*, *Level the Playing Field v. Fed. Election Comm'n*, 381 F. Supp. 3d 78, 89–94 (D.D.C. 2019), *aff'd*, 961 F.3d 462 (D.C. Cir. 2020); *see also Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 17 n.8, 38 n.16 (D.D.C. 2020) (Jackson, J.) (striking extra-record evidence submitted in support of summary judgment motion because "in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision" (quotations omitted)). Here, the record compiled by the agency does not include the Griffin Declaration (or the chart, facts, or characterizations presented therein) or the Declaration's attachments and exhibits. *See* ECF No. 32. And Jazz does not dispute that these materials were not considered by the agency and so are not properly part of the administrative record. Thus, for the Court to consider those extra-record materials, Jazz had to move to supplement the administrative record. *See Swisher Int'l*, 2023 WL 6460028, at *3–4. Jazz did not file that motion, despite having a month

before summary judgment briefing commenced in which to do so.[3] Instead, the company proceeded directly to summary judgment because it "believe[d]" the existing record was "more than sufficient" for APA review. MSJ 15 n.6. Jazz cannot now escape the consequence of its choice not to move to supplement the record, simply by filing the Griffin Declaration and its appendages on the docket.

Beyond procedural faults, Jazz has not met the substantive burden of demonstrating the necessary circumstances for supplementing the record. *See City of Dania Beach*, 628 F.3d at 590. Indeed, Jazz has not even attempted to show the kinds of "gross procedural deficiencies" required by the D.C. Circuit. *Hill Dermaceuticals*, 709 F.3d at 47. For instance, the company has not made "a strong showing of bad faith or improper behavior" by the agency in compiling the record or shown that the 2271-page administrative record "is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514 (quotations omitted).

Because the Griffin Declaration and its attachments and exhibits are outside the administrative record, they are irrelevant to Jazz's APA claim. *See* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142; *Hill Dermaceuticals*, 709 F.3d at 47. They should be stricken. *See* Fed. R. Civ. P. 12(f), 56(c)(4); Fed. R. Evid. 401, 402; *Level the Playing Field*, 381 F. Supp. 3d at 89–94; *Wasserman*, 2007 WL 274748, at *2; *Jud. Watch*, 224 F.R.D. at 263–64; *Larouche*, 2000 WL 805214, at *13–14.

---

[3] Jazz's approach is also procedurally improper because Jazz should have given FDA an opportunity to consider the extra-record documents before presenting those documents in court. *See infra* pp. 12–13.

**B.  Jazz's extra-record documents are also irrelevant on their face**

Paragraphs 3–14 and Attachment 1 of the Griffin Declaration, which relate to Jazz's

FOIA requests, are irrelevant because those FOIA requests are not the subject of this

lawsuit.[4] And Jazz has not moved to complete the record. MSJ 15 n.6; *see also Stand Up*

*for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014) (explaining

that, even if an agency possesses certain records and discloses them under FOIA, that

"is not sufficient to show that the same records were considered by the agency in

connection with a decision subject to an APA challenge"). Similarly, because Jazz has

not challenged the scope of the record, counsel's discussions in paragraphs 15–21 and

Attachment 2 of the Griffin Declaration are irrelevant.

So too are Paragraphs 22 and 23 of the Griffin Declaration, which present a counsel-

prepared chart summarizing drug approval information. Jazz's summary judgment

motion cites these paragraphs to support the propositions that FDA's Division of

Neurology 1, together with its predecessors (the Review Division), part of the Center for

Drug Evaluation and Research, "is the unit within FDA that has had primary

responsibility for oxybate since at least 2002" and "is the primary regulator for virtually

all drugs that FDA has approved to treat sleep disorders." MSJ 16. But the Review

Division's historical regulatory purview and its regulation of drugs other than Lumryz

are irrelevant to the only issue in this litigation: whether FDA correctly determined that

Xywav's orphan-drug exclusivity did not bar approval of Lumryz. Moreover, the office

---

[4] Indeed, three of the documents Jazz requested were released under FOIA and
included in the administrative record. *See supra* p. 2.

that is responsible for making the clinical superiority determination at the heart of this case is not the Review Division, but FDA's Office of Orphan Products Development within the Office of Clinical Policy and Programs in the Office of the Commissioner.

Other exhibits to the Griffin Declaration fare no better on the relevance front. With respect to Exhibit 2, the Court is well positioned to interpret *Depomed, Inc. v. U.S. Department of Health and Human Services*, 66 F. Supp. 3d 217 (D.D.C. 2014), on its own. The opinions of two bloggers about that case, and how "[t]he trade press" reacted to it, MSJ 10 n.1, have no bearing on Jazz's APA claim. Furthermore, the exhibits in Category 5 (FDA documents relating to the agency's procedure and organization, Exs. 4–8), are irrelevant to Jazz's APA claim for the reasons discussed in Federal Defendants' merits brief. ECF No. 45-2, FDA Cross-MSJ, at 27–29. For example, the cited sections of FDA's Staff Manual Guide (Exs. 4, 8) were not implicated here, and in any event would not support an APA claim because they are designed to govern FDA's internal affairs rather than set forth rules by which Jazz's interests are to be regulated. FDA Cross-MSJ 27–29.

### C. The extra-record documents in Categories 2 and 3 and Exhibit 10 are duplicative of materials in the administrative record

The exhibits in Categories 2 (FDA publications about sodium, Exs. 3, 11–14) and 3 (Scientific publications, Exs. 15–25, 28–37, 39) are duplicative of materials in the record. *See Sammons v. Regence Bluecross Blueshield of Oregon*, No. 3:15-CV-01703-SI, 2016 WL 1171019, at *8 n.9 (D. Or. Mar. 23, 2016), *aff'd*, 739 F. App'x 385 (9th Cir. 2018) (declining to consider extra-record article that "does not present new scientific evidence that would affect the outcome" of the agency's decision and that "repeated the scientific

evidence already contained in the administrative record"). As to the FDA publications about sodium (Category 2), the existing record shows that FDA was aware that the government recommends less than 2,300 mg of sodium each day and considered the health risks of sodium and the benefits of reducing sodium intake in reaching the decision under review. *See, e.g.*, AR553–556; AR568–570; AR2106. Regarding the scientific publications in Category 3, although Jazz argues that the sources cited by FDA's Office of Orphan Products Development (which are in the record) "barely scratch the surface of the literature," MSJ 37-41, Jazz does not attempt to show that the extra-record documents it seeks to introduce are not duplicative of those cited sources.

Finally, Jazz does not show why the Court should consider Exhibit 10, a 2018 FDA memorandum related to Signifor LAR, given that the administrative record includes the 2019 Signifor LAR exclusivity memorandum. AR1518–21; AR549.

### D.  Consideration of these documents would prejudice Federal Defendants

Jazz's attempt to have its cake and eat it too—*i.e.*, declining to bear the procedural burden of supplementing the record but still introducing extra-record documents—is highly prejudicial to Federal Defendants. For example, Jazz cites FDA's processing of its FOIA requests and counsel's communications about the contents of the record to malign the government generally. *See* MSJ 15–16 & n.6 (citing Griffin Decl. ¶¶ 3–21). These baseless accusations[5] distract from the actual issues in this case.

---

[5] To set the public record straight, Federal Defendants note that the Griffin Declaration mischaracterizes the government's explanation for why FDA did not include certain internal FDA communications in the administrative record. Griffin Decl. ¶ 19. FDA did not include those documents in the record **both** because they "were not

Additionally, the exhibits in Categories 1 (FDA correspondence and memoranda relating to other drugs, Exs. 1, 9, 10, 26, 27, 38), 2 (FDA publications about sodium, Exs. 3, 11–14), and 3 (Scientific publications, Exs. 15–25, 28–37, 39) flout the long-standing rule of "issue exhaustion," which "require[s] parties to give the agency an opportunity to address an issue before seeking judicial review of that question." *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021); *see United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *Adamski v. McHugh*, 304 F. Supp. 3d 277, 236–39 (D.D.C. 2015). This rule is implemented in FDA's regulations, which provide that "[a]n interested person who wishes to rely upon information or views not included in the administrative record shall submit them to [FDA] with a new petition to modify the action under [21 C.F.R.] § 10.25(a)." 21 C.F.R. § 10.45(f); *see also id.* § 10.45(b).

The issue exhaustion requirement ensures fairness to the agency by allowing the agency "to correct its own errors" and "produce a useful record for subsequent judicial consideration." *McCarthy v. Madigan*, 503 U.S. 140, 145–46 (1992). Particularly when, as here, an issue calls for the application of scientific expertise, the agency should be given the opportunity "to apply that expertise" before the issue is raised in court. *McKart v. United States,* 395 U.S. 185, 194 (1969); *cf. Ethyl Corp. v. EPA*, 541 F.2d 1, 36 (D.C. Cir. 1976) (en banc) ("We must look at the [agency] decision not as the chemist, biologist or statistician that we are qualified neither by training nor experience to be, but as a

---

directly or indirectly considered by the agency decisionmaker" ***and*** because they "are protected by the deliberative process privilege." Griffin Decl. at 57.

reviewing court exercising our narrowly defined duty of holding agencies to certain minimal standards of rationality.").

As the administrative record shows, Jazz has communicated with FDA about whether Xywav's orphan-drug exclusivity blocked approval of Lumryz since 2021. AR851–1021; *see also* AR1240–88; AR1291–342. Jazz could have presented the Griffin Declaration and its attachments and exhibits to FDA during those communications, and Jazz indeed provided FDA with similar materials. Additionally, Jazz could have presented these documents formally through a Citizen Petition, which allows any "interested person [to] petition the Commissioner to . . . take or refrain from taking any . . . form of administrative action." 21 C.F.R. § 10.25(a); *see id.* § 10.30. Jazz did not and thus deprived FDA of the opportunity to exercise its judgment and apply its expertise to these documents. Thus, it would prejudice Federal Defendants for the Court to consider these documents and thereby excuse Jazz's failure to present them to the agency in the first instance.

## II.  The Court should deny Jazz's motion for judicial notice

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "This rule governs judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Adjudicative facts are simply the facts of the particular case," whereas legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or

in the enactment of a legislative body." Fed. R. Evid. 201, Advisory Committee Notes; *see Gration v. Islamic Republic of Iran*, No. 21-CV-1859 (BAH), 2023 WL 5221955, at *2 n.2 (D.D.C. Aug. 15, 2023). A court may take judicial notice only of matters that are relevant. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011); *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009).

In APA cases, there are strict limits on judicial notice because "plaintiffs should not be permitted to exploit the standard for judicial notice to circumvent the strict standard for supplementing the administrative record." *Level the Playing Field*, 381 F. Supp. 3d at 92. "[J]udicial notice of an adjudicative fact *not* part of the administrative record generally is *irrelevant* to the court's analysis of the merits." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 n.14 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) (emphasis in original). Thus, "[j]udicial notice is typically an inadequate mechanism for a court to consider extra-record evidence when reviewing an agency action." *Level the Playing Field*, 381 F. Supp. 3d at 92 (quoting *Dist. Hosp. Partners*, 971 F. Supp. 2d at 32 n.14).

To prevent parties from using judicial notice "as an end-run around the standards for supplementing the administrative record," courts "only consider an adjudicative fact subject to judicial notice that is *not* part of the administrative record if it qualifies for supplementation as extra-record evidence." *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 172 (D.D.C. 2014) (quoting *Dist. Hosp. Partners,* 971 F. Supp. 2d at 32 n.14) (internal quotation marks omitted); *see Riffin v. Surface Transportation Bd.*, No. 16-1147, 2016 WL 6915552, at *1 (D.C. Cir. Oct. 6, 2016) (per curiam) (denying motion for judicial

14

notice because "[t]he general rule is that review is to be based on the full administrative record that was before the agency," and "Petitioner has not demonstrated any . . . exception to the general rule"). Jazz requests judicial notice of the chart in paragraph 23 of the Griffin Declaration, which summarizes drug approval information, and the exhibits in Categories 1, 2, and 5. *See* Mot. for Judicial Notice 2. But none of these documents meet the standard for judicial notice in an APA case.

The chart in paragraph 23 and the exhibits in Categories 1 (FDA correspondence and memoranda relating to other drugs, Exs. 1, 9, 10, 26, 27, 38) and 2 (FDA publications about sodium, Exs. 3, 11–14) are not subject to judicial notice because they do not "qualif[y] for supplementation" of the record. *Silver State Land*, 59 F. Supp. 3d at 172 (quoting *Dist. Hosp. Partners*, 971 F. Supp. 2d at 32 n.14) (internal quotation marks omitted); *see Riffin*, 2016 WL 6915552, at *1. There are no "unusual circumstances" that would justify supplementing the record with these documents, *City of Dania Beach*, 628 F.3d at 590 (quotations omitted), and Jazz has not met its burden to show otherwise, *see supra* pp. 6–8.

The chart in paragraph 23 is not subject to judicial notice for several additional reasons. First, it is irrelevant. *See supra* pp. 9–10; *Whiting*, 637 F.3d at 364; *Larson*, 565 F.3d at 870. Second, it is not a "public record[] available from the FDA's government database website" like in *Reynolds v. Medtronic, Inc.*, No. 3:20-CV-403, 2021 WL 1854968, at *4 (S.D. Ohio May 10, 2021) (a case that also did not involve an APA claim); *see* Mot. for Judicial Notice 2. Instead, the chart is *Jazz's counsel's summary* of information obtained from a government website, which is not subject to judicial notice. *See Video*

*Gaming Techs., Inc. v. Castle Hill Studios LLC*, No. 17-CV-454-GKF-JFJ, 2018 WL 284991, at

*3 n.3 (N.D. Okla. Jan. 3, 2018) ("Nor are the spreadsheets prepared by Castle Hill's

counsel the proper subject of judicial notice, as the summaries are not a matter of public

record.").

The exhibits in Category 5 (FDA documents relating to the agency's procedure and

organization, Exs. 4–8), do not qualify for judicial notice because they are not

adjudicative facts—that is, "the facts of th[is] particular case." Fed. R. Evid. 201,

Advisory Committee Notes; *see* Fed. R. Evid. 201(a); *Gration*, 2023 WL 5221955, at *2 n.2.

As explained in Federal Defendants' merits brief, the Staff Manual Guide played no role

in the agency's decisionmaking. FDA Cross-MSJ 27–29.

The cases Jazz cites are inapposite. In *Western Watersheds Project v. Bernhardt*, 468 F.

Supp. 3d 29 (D.D.C. 2020), the court considered extra-record documents on a motion for

preliminary injunction, which is a long-recognized exception to the rule of record

review. *Id.* at 35 n.2 (citing *Am. Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d

230, 247 (D.D.C. 2003), which cited *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)).

Moreover, *Western Watersheds Project* does not support Jazz's request for judicial notice

because the court in that case addressed only mootness, standing, and irreparable harm,

*not* the merits. *Id.* at 40–50. *Western Watersheds Project* thus does not support using

judicial notice "as an end-run around the standards for supplementing the

administrative record" at summary judgment. *Silver State Land*, 59 F. Supp. 3d at 172.

The only other APA case Jazz relies on, *Pharmaceutical Research and Manufacturers of

America v. U.S. Department of Health and Human Services*, 43 F. Supp. 3d 28 (D.D.C. 2014),

is not persuasive because the court overlooked the strict limits on judicial notice in the APA context. *See Riffin*, 2016 WL 6915552, at *1; *Level the Playing Field*, 381 F. Supp. 3d at 92; *Silver State Land*, 59 F. Supp. 3d at 172; *Dist. Hosp. Partners*, 971 F. Supp. 2d at 32 n.14. Moreover, although the court granted the plaintiff's unopposed motion to take judicial notice of an FDA Frequently Asked Questions webpage, *Pharm. Rsch. & Manufacturers of Am.*, 43 F. Supp. 3d at 33–34, the court did not cite that webpage in discussing the merits and it is unclear how, if at all, the document was substantively considered. Moreover, the court noted that other extra-record materials would have been stricken from the record had they not been mooted. *See id.* at 34 n.6.

The remaining cases Jazz cites are inapposite because they did not involve an APA claim and thus were not subject to the strict limits on judicial notice applicable here. *Reynolds*, discussed above, was a products liability case about an allegedly defective medical device. *Kelleher v. Dream Catcher, L.L.C.*, 221 F. Supp. 3d 157 (D.D.C. 2016), concerned a dispute between a homeowner and a contractor over a botched home renovation. And the vacated decision in *Garnett v. Zeilinger*, 313 F. Supp. 3d 147 (D.D.C. 2018), *vacated*, 485 F. Supp. 3d 206 (D.D.C. 2020), decided a preliminary injunction motion in a class action against a D.C. official alleging that the District had not complied with statutory deadlines for the federal Supplemental Nutrition Assistance Program.

## CONCLUSION

The Court should grant Federal Defendants' Motion to Strike the Declaration of Sean C. Griffin and Attachments and Exhibits Thereto, and deny Jazz's Motion for Judicial Notice. The Court should also order Jazz to refile its Motion for Summary

Judgment, removing any citation to or reliance on the Griffin Declaration and its

attachments and exhibits and making no other changes.

October 20, 2023                                   Respectfully submitted,

                                                   */s/ Isaac C. Belfer*
                                                   NOAH T. KATZEN (D.C. Bar No. 1006053)
                                                   ISAAC C. BELFER (D.C. Bar No. 1014909)
                                                   Trial Attorneys
                                                   Consumer Protection Branch
                                                   Civil Division
                                                   U.S. Department of Justice
                                                   P.O. Box 386
                                                   Washington, DC 20044-0386
                                                   (202) 305-2428 (Katzen)
                                                   (202) 305-7134 (Belfer)
                                                   (202) 514-8742 (fax)
                                                   Noah.T.Katzen@usdoj.gov
                                                   Isaac.C.Belfer@usdoj.gov

                                                   *Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

October 20, 2023                                        */s/ Isaac C. Belfer*
                                                                ISAAC C. BELFER