PUBLIC VERSION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., Plaintiff, | |
| v. | Case No. 1:23-cv-01819-APM |
| XAVIER BECERRA, *et al.*,  Defendants, | |
| and | |
| AVADEL CNS PHARMACEUTICALS, LLC, Intervenor-Defendant. | |

**Federal Defendants' Reply in Support of Their Motion to Strike the Declarations of Sean C. Griffin and Attachments and Exhibits Thereto, and Opposition to Jazz's Protective Motion to Complete and Supplement the Record**

Of Counsel:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human
  Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

LEAH A. EDELMAN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA L. LISKAMM
Director

JAMES W. HARLOW
Acting Assistant Director

NOAH T. KATZEN
ISAAC C. BELFER
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 305-2428 (Katzen)
(202) 305-7134 (Belfer)
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov
Isaac.C.Belfer@usdoj.gov

PUBLIC VERSION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

  I.    The Court should strike the Griffin Declarations and the attachments and
      exhibits thereto ........................................................................................... 2

    A.   Jazz fails to overcome Federal Defendants' showing that the documents
       should be stricken as irrelevant ............................................................. 3

    B.   Jazz's exhibits are irrelevant to the Court's legal analysis.................................. 6

    C.   Jazz's novel "in one sense or another" standard is not the law ......................... 8

    D.   Federal Defendants would be prejudiced by the Court's consideration of
       documents that Jazz failed to present to the agency.......................... 10

  II.   The Court should deny Jazz's motion to complete and supplement
      the record ................................................................................................ 12

    A.   The Court should hold Jazz to its choice to move for summary
       judgment on the existing administrative record ................................ 13

    B.   Jazz has not met its burden to complete the record with Exhibits
       1, 3, 4, 8, 10–14, 17–22, 24–30, 32, 34, 38, 39, and 44–47........................ 15

      1.   Jazz has not shown that the FDA-created documents were directly or
        indirectly considered by the decisionmaker ........................................ 16

      2.   Jazz has not shown that exhibits cited by documents in the record were
        directly or indirectly considered by the decisionmaker ................................ 18

      3.   Jazz has not shown that the documents submitted to relevant FDA
        officials in other contexts were directly or indirectly considered by the
        decisionmaker........................................................................................ 20

    C.   Jazz has not met its burden to supplement the record with Exhibits
       1, 3–8, 10, 11, 13–39, and 43–47.......................................................... 21

CONCLUSION ................................................................................................................ 24

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Cases**

*Camp v. Pitts,*
  411 U.S. 138 (1973)..................................................................................... 3, 4, 9

*The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior,*
  667 F. Supp. 2d 111 (D.D.C. 2009).................................................. 13, 16, 18, 20

*City of Dania Beach v. FAA,*
  628 F.3d 581 (D.C. Cir. 2010)..................................................................... 17, 22, 23

*City of Duluth v. Jewell,*
  968 F. Supp. 2d 281 (D.D.C. 2013)............................................................... 18, 21

*County of San Miguel v. Kempthorne,*
  587 F. Supp. 2d 64 (D.D.C. 2008) ...................................................................... 17

*Depomed, Inc. v. U.S. Department of Health and Human Services,*
  66 F. Supp. 3d 217 (D.D.C. 2014) ......................................................................... 8

*Dist. Hosp. Partners, L.P. v. Burwell,*
  786 F.3d 46 (D.C. Cir. 2015)......................................................................... 17, 23

*Dist. Hosp. Partners, L.P. v. Sebelius,*
  971 F. Supp. 2d 15 (D.D.C. 2013)............................................................. 15, 16, 17

*Ferring Pharmaceuticals, Inc. v. Burwell,*
  No. 1:15-cv-802 (RC), 2016 WL 4734333 (D.D.C. Sept. 9, 2016) ..................... 6, 7

*Fund for Animals v. Williams,*
  391 F. Supp. 2d 191 (D.D.C. 2005)...................................................................... 17

*Hill Dermaceuticals, Inc. v. FDA,*
  709 F.3d 44 (D.C. Cir. 2013).......................................................................passim

*In re Gibrick,*
  No. 12 A 1195, 2015 WL 965939 (Bankr. N.D. Ill. Feb. 25, 2015)..................... 14

*In re Qualcomm Antitrust Litig.,*
  No. 17-MD-02773-JSC, 2023 WL 6301063 (N.D. Cal. Sept. 26, 2023)......... 14, 15

*Jud. Watch, Inc. v. U.S. Dep't of Com.,*
  224 F.R.D. 261 (D.D.C. 2004).............................................................................. 4

*Kent County, Delaware Levy Court v. EPA,*
  963 F.2d 391 (D.C. Cir. 1992)............................................................................ 21

*Larouche v. Dep't of the Treasury,*
  No. CIV.A.91-1655 (RCL), 2000 WL 805214 (D.D.C. Mar. 31, 2000) ............... 5

*Level the Playing Field v. Fed. Election Comm'n,
   381 F. Supp. 3d 78 (D.D.C. 2019) ............................................................... 17, 23, 24

*Marcum v. Salazar,
   751 F. Supp. 2d 74 (D.D.C. 2010) .............................................................. 18, 19, 22

McCarthy v. Madigan,
   503 U.S. 140 (1992) ............................................................................................ 11, 12

McKart v. United States,
   395 U.S. 185 (1969) ................................................................................................... 11

McKinley v. Fed. Deposit Ins. Corp.,
   No. 1:15-CV-1764 (KBJ), 2018 WL 11260466 (D.D.C. Sept. 30, 2018) ............. 14

Nio v. DHS,
   385 F. Supp. 3d 44 (D.D.C. 2019) ............................................................................ 6

*Oceana, Inc. v. Ross,
   454 F. Supp. 3d 62 (D.D.C. 2020) .............................................................. 4, 23, 24

*Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs,
   448 F. Supp. 2d 1 (D.D.C. 2006) ................................................................... 1, 16, 21

Sammons v. Regence Bluecross Blueshield of Or.,
   No. 3:15-CV-01703-SI, 2016 WL 1171019 (D. Or. Mar. 23, 2016) ....................... 5

San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission,
   751 F.2d 1287 (D.C. Cir. 1984) ............................................................................... 17

Sandoz Inc. v. Becerra,
   57 F.4th 272 (D.C. Cir. 2023) .................................................................................. 11

Sara Lee Corp. v. Am. Bakers Ass'n,
   252 F.R.D. 31 (D.D.C. 2008) ................................................................................... 16

Save the Colorado v. U.S. Dep't of the Interior,
   517 F. Supp. 3d 890 (D. Ariz. 2021) ....................................................................... 19

Silver State Land, LLC v. Beaudreau,
   59 F. Supp. 3d 158 (D.D.C. 2014) ........................................................................... 16

St. Augustine Sch. v. Underly,
   78 F.4th 349 (7th Cir. 2023) .................................................................................... 14

Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,
   255 F. Supp. 3d 101 (D.D.C. 2017) ........................................................................... 4

*Swisher Int'l, Inc. v. FDA,
   No. 22-CV-954 (CRC), 2023 WL 6460028 (D.D.C. Oct. 4, 2023) ..................... 9, 13

Tuttle v. Jewell,
   168 F. Supp. 3d 299 (D.D.C. 2016) ........................................................................... 5

PUBLIC VERSION

*United Student Aid Funds, Inc. v. Devos,*
   237 F. Supp. 3d 1 (D.D.C. 2017) ................................................................. 22, 23

*Wasserman v. Rodacker,*
   No. CIV.A.06 1005 RWR, 2007 WL 274748 (D.D.C. Jan. 29, 2007) ..................................... 5

*Williams v. Turner Sec., Inc.,*
   No. CV 19-2636 (EGS), 2021 WL 4462635 (D.D.C. Sept. 29, 2021) ............................... 5, 6

*Wilson v. DNC Servs. Corp.,*
   831 F. App'x 513 (D.C. Cir. 2020) ................................................................. 14

**Statutes**

*5 U.S.C. § 706 ................................................................................................. 3, 4, 9

**Regulations**

21 C.F.R. §

   10.25(a) ....................................................................................................... 10

   10.30 ......................................................................................................... 10

**Rules**

Fed. R. Civ. P. 1 ................................................................................................ 15

*Fed. R. Civ. P. 12(f) ........................................................................................ 3, 4, 5

*Fed. R. Civ. P. 56(c)(4) .................................................................................... 4

iv

## INTRODUCTION

Before it moved for summary judgment, Jazz threatened to move to complete the administrative record. But Jazz chose not to take that path and instead sought summary judgment on the existing record. Except that, under the guise of judicial notice, Jazz supported its motion with an evidentiary declaration of counsel and dozens of attachments and exhibits. Federal Defendants and Avadel understandably moved to strike those extra-record documents because they may not be considered in evaluating Jazz's Administrative Procedure Act (APA) claim. Now, to try to escape the consequences of its litigation choice, Jazz has filed a "Protective Motion to Complete and Supplement the Record." ECF No. 61-2. But Jazz should be held to its considered choice to seek summary judgment under the existing record—a choice on which Federal Defendants relied when preparing their cross-motion for summary judgment.

Apart from procedural gamesmanship, Jazz's belated motion to complete and supplement the record is meritless. Jazz has not met its burden to complete the record (*i.e.*, to add material that should have originally been included in the record) because it has failed to rebut the strong presumption of regularity that FDA properly designated the administrative record. That presumption is based on the "[c]ommon sense" notion that "[i]t is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it—namely, were directly or indirectly considered." *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotations omitted). Jazz has not provided non-speculative, concrete evidence showing that its proffered exhibits were actually considered by the

decisionmaker. Jazz also has not met its burden to supplement the administrative record (*i.e.*, to add extra-record material that was not considered by the decisionmaker) because it has not shown unusual circumstances justifying a departure from the general rule that judicial review is limited to the materials directly or indirectly considered by the agency decisionmaker.

For similar reasons, the Court should grant Federal Defendants' motion to strike, which applies to both the first and second Griffin Declarations and their attachments and exhibits. All but one of these documents are not in the administrative record, and Jazz has not shown that the record should be completed or supplemented with them. Jazz also fails to overcome Federal Defendants' showing that the documents are otherwise irrelevant, redundant of documents already in the record, and prejudicial to Federal Defendants.

**ARGUMENT**

Neither of Jazz's attempts to introduce documents outside the administrative record in this APA case is proper. First, the Court should strike the extra-record Griffin Declarations and their attachments and exhibits. Second, the Court should deny Jazz's belated and meritless motion to complete and supplement the record.

**I.  The Court should strike the Griffin Declarations and the attachments and exhibits thereto**

Federal Defendants' opening brief explained why the first Griffin Declaration and its attachments and exhibits are not properly before the Court and should be stricken. FDA Br., ECF No. 47-1, at 5–13. Those arguments apply equally to the second Griffin

PUBLIC VERSION

Declaration and its exhibits.[1] In its Opposition, Jazz fails to overcome Federal Defendants' threshold demonstration that all these extra-record materials are not properly considered for Jazz's APA claim. Jazz's assertion that several of its exhibits are relevant to the Court's legal analysis is incorrect. And the company cannot invent a standard of being before the agency "in one sense or another." Finally, Jazz has not overcome Federal Defendants' showing that they would be prejudiced by the Court's consideration of documents that Jazz failed to present to the agency.

### A. Jazz fails to overcome Federal Defendants' showing that the documents should be stricken as irrelevant

Jazz does not dispute that, in an APA case, the Court's review is limited to the administrative record. *See* 5 U.S.C. § 706; *Camp v. Pitts,* 411 U.S. 138, 142 (1973); *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). Because the Griffin Declarations and all but one of their attachments and exhibits are not in the record, they are irrelevant to Jazz's APA claim and should be stricken. *See* Fed. R. Civ. P. 12(f), 56(c)(4). Because Exhibit 16 is already in the administrative record at AR1252–53, it should be stricken as "redundant." Fed. R. Civ. P. 12(f).

Contrary to Jazz's belief, it cannot "establish the relevance of the exhibits" by citing them in its own merits briefs. Jazz Br., ECF No. 60-2, at 23. Those citations outside the

---

[1] Exhibits 40, 41, 44, 45, 46, and 47 to the second Griffin Declaration fall within what Federal Defendants' opening brief termed Category 1 (FDA correspondence and memoranda relating to drugs other than Lumryz). *See* FDA Br. 3. The reasons for striking the exhibits in Category 1 also apply to newly submitted Exhibit 42, a meeting briefing package that Jazz submitted to FDA regarding Xywav. Finally, newly submitted Exhibit 43 falls within Category 3 (scientific publications).

PUBLIC VERSION

record in support of an APA claim were improper from the start. *See* 5 U.S.C. § 706; *Camp,* 411 U.S. at 142; *Hill Dermaceuticals,* 709 F.3d at 47. Similarly, Jazz's "[d]isagreement with [the] agency's" factual findings about what the literature showed "is not enough to warrant the consideration of extra-record evidence," such as the scientific publications in Category 3. *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101, 125 (D.D.C. 2017); *see Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 70 (D.D.C. 2020) (a party's factual "disagree[ment] with the agency" is not a reason to consider "extra-record evidence" (cleaned up)). *Contra* Jazz Br. 24–26.[2] Jazz knew that if it wanted the Court to consider scientific articles or other documents that were outside the agency's certified record, it needed to move to complete or supplement the record, *see* Griffin Decl. at 51, not just file extra-record documents on the docket.

Jazz implies that Federal Defendants' relevance objection is insufficient because, in certain cases, courts have stricken party-submitted documents that were not only irrelevant, but also objectionable for other reasons. Jazz Br. 22–23. But irrelevance alone is sufficient to strike a document. Rule 56 requires a declaration in support of a summary judgment motion to "set out facts that would be admissible in evidence," Fed. R. Civ. P. 56(c)(4), and Rule 12 authorizes courts to strike "immaterial [or] impertinent" matters, Fed. R. Civ. P. 12(f), meaning matters that are "not relevant to the resolution of the issue at hand," *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 224 F.R.D. 261, 263 (D.D.C.

---

[2] Jazz claims "FDA has retreated from OOPD's position" and now "concedes" the effectiveness of twice-nightly oxybate. Jazz Br. 26. Not true. *See* FDA Cross-MSJ, ECF No. 45-2, at 31; FDA Cross-MSJ Reply, ECF No. 71-2, at 21–22. Regardless, Jazz's argument does not justify its improper submission of extra-record documents.

PUBLIC VERSION

2004); *see Wasserman v. Rodacker*, No. CIV.A.06 1005 RWR, 2007 WL 274748, at *2 (D.D.C. Jan. 29, 2007); *Larouche v. Dep't of the Treasury*, No. CIV.A.91-1655 (RCL), 2000 WL 805214, at *13–14 (D.D.C. Mar. 31, 2000), *amended in part sub nom. LaRouche v. U.S. Dep't of Treasury*, No. CIV. A. 91-1655(RCL), 2000 WL 33122742 (D.D.C. Nov. 3, 2000) ("As a general rule, the court cannot consider inadmissible hearsay or incompetent evidence."). Courts in APA cases have granted motions to strike based solely on irrelevance. For example, in *Tuttle v. Jewell*, 168 F. Supp. 3d 299, 306 n.8 (D.D.C. 2016), *aff'd sub nom. Tuttle v. Zinke*, No. 16-5095, 2017 WL 11779601 (D.C. Cir. Apr. 18, 2017), the court granted the government's motion to strike a declaration submitted in support of plaintiff's summary judgment motion because the declaration was "not material to the Court's decision," since it was "extra-record evidence that is not permitted in an APA case without a strong showing of unusual circumstances."

Jazz also concedes two arguments by failing to respond in its Opposition. **First**, Jazz fails to respond to Federal Defendants' argument that the exhibits in Categories 2 (FDA publications about sodium, Exs. 3, 11–14) and 3 (scientific publications, Exs. 15–25, 28–37, 39) are duplicative of materials already in the record. FDA Br. 10–11. Thus, the Court should "treat this argument as conceded," *Williams v. Turner Sec., Inc.*, No. CV 19-2636 (EGS), 2021 WL 4462635, at *3 (D.D.C. Sept. 29, 2021), *case dismissed*, No. 21-7119, 2022 WL 16579683 (D.C. Cir. May 20, 2022), and strike the exhibits as "redundant" of materials already in the record, Fed. R. Civ. P. 12(f); *see Sammons v. Regence Bluecross Blueshield of Or.*, No. 3:15-CV-01703-SI, 2016 WL 1171019, at *8 n.9 (D. Or. Mar. 23, 2016),

*aff'd*, 739 F. App'x 385 (9th Cir. 2018) (declining to consider extra-record article that "repeated the scientific evidence already contained in the administrative record").

**Second**, Jazz fails to respond to and thus concedes Federal Defendants' argument that paragraphs 3–14 and Attachment 1 of the first Griffin Declaration are irrelevant because Jazz's Freedom of Information Act (FOIA) requests are not the subject of this lawsuit. FDA Br. 9; *see Williams*, 2021 WL 4462635, at *3. Jazz's use of these materials solely to cast the government in a false light, wrongly accusing it of impropriety in processing Jazz's FOIA requests, should not be countenanced. FDA Br. 11 (citing MSJ, ECF No. 34-2, at 15–16 & n.6, in turn citing Griffin Decl. ¶¶ 3–21). *Contra* Jazz Br. 23–24.

### B.  Jazz's exhibits are irrelevant to the Court's legal analysis

Jazz argues that a subset of exhibits (Exs. 1, 2, 4, 8–10, 12, 14, 26, 27, 38, 44–47), cutting across several Categories, are properly cited in its merits briefs because "the Court is not limited to the administrative record in conducting its legal analysis." Jazz Br. 4 (quoting *Nio v. DHS*, 385 F. Supp. 3d 44, 59 (D.D.C. 2019)). But these exhibits are not relevant to the Court's legal analysis. Jazz argues that similar extra-record documents were considered in *Ferring Pharmaceuticals, Inc. v. Burwell*, No. 1:15-cv-802 (RC), 2016 WL 4734333 (D.D.C. Sept. 9, 2016), *enforcement denied sub nom. Ferring Pharms., Inc. v. Azar*, 296 F. Supp. 3d 166 (D.D.C. 2018), Jazz Br. 4–5, but that case is inapposite. The plaintiff there filed a motion for reconsideration that cited several documents to correct an error in the court's prior opinion. *See Ferring Pharms.*, 2016 WL 4734333, at *6. Defendants did not object to those documents as outside the administrative record, *see* Defendants' Opposition to Plaintiff's Motion for

Reconsideration, ECF No. 44, *Ferring Pharms.*, No. 1:15-cv-802 (RC) (D.D.C. Apr. 13,
2016), and when the court granted the reconsideration motion, it did not address the
documents' extra-record status, *see Ferring Pharms.*, 2016 WL 4734333.

Generally, the exhibits in Category 1 are internal FDA correspondence and
memoranda relating to drugs other than Lumryz, made public only through FOIA, that
Jazz uses to support factual assertions—not to establish legal propositions. For example,
Jazz cites Exhibits 26, 27, and 38 to dispute the following factual findings by FDA's
Office of Orphan Products Development (OOPD): "(1) that treatment with twice-nightly
oxybate harms the sleep of patients with narcolepsy, and (2) that avoiding one
awakening is a medically significant benefit." Jazz Br. 5. And while Jazz maintains that
it cites Exhibits 1, 10, and 44–47 to show that, in prior cases, OOPD "appl[ied] the
comparable safety requirement," *id.*; *but see* FDA Cross-MSJ 23–26; FDA Cross-MSJ
Reply 15–17, whether OOPD did so is a factual, not a legal, issue. Finally, Exhibit 9 is
not a legal "authority on how to interpret the governing statute," Jazz Br. 5; it is an
internal memorandum from a staff attorney in FDA's Office of Chief Counsel to OOPD
advising whether "OOPD's position that colloidal dantrolene is not eligible for orphan
designation for the treatment of malignant hyperthermia is legally supportable," Ex. 9
at 2.

Regarding Category 2 (FDA publications about sodium), Jazz cites these
documents, not to support legal arguments, but instead to support its factual arguments
about sodium consumption. *E.g.*, MSJ 33–34. And although FDA guidances, such as

PUBLIC VERSION

Exhibits 12 and 14, can sometimes be used to support legal arguments, Jazz Br. 6, that is not how Jazz uses these guidances.

The blog post (Category 4) is another example of a document that is irrelevant to the Court's legal analysis and thus should not be considered. As Federal Defendants explained in their opening brief, the Court is well positioned to interpret *Depomed, Inc. v. U.S. Department of Health and Human Services*, 66 F. Supp. 3d 217 (D.D.C. 2014), without the assistance of bloggers. The opinions of bloggers and "[t]he trade press," MSJ 10 n.1, have no bearing on the legal merit of Jazz's APA claim. FDA Br. 10.

Regarding Exhibits 4 and 8 in Category 5 (FDA documents relating to the agency's procedure and organization), the FDA Staff Manual Guide may sometimes be relevant to a court's legal analysis, Jazz Br. 5–6, but not always. The sections of the Staff Manual Guide Jazz asks this Court to consider were not implicated here, and in any event would not support an APA claim because they are designed to govern FDA's internal affairs rather than set forth rules by which Jazz's interests are to be regulated. FDA Br. 10 (citing FDA Cross-MSJ 27–29).

   **C.  Jazz's novel "in one sense or another" standard is not the law**

Jazz argues that Exhibits 3, 10, 11, 13, 14, 16–22, 24, 25, 28–36, and 39 "were before FDA in one sense or another," Jazz Br. 7, such as by being cited in documents in the record or presented to relevant FDA officials in other contexts, Jazz Br. 7–10. But that is not the actual standard that governs which documents may be considered in deciding APA claims. Other than very narrow exceptions inapplicable here, judicial review in APA cases is limited to the administrative record, which "consists of all documents and

PUBLIC VERSION

materials that the agency directly or indirectly considered." *Swisher Int'l, Inc. v. FDA*, No. 22-CV-954 (CRC), 2023 WL 6460028, at *3 (D.D.C. Oct. 4, 2023) (quotations omitted); *see* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142; *Hill Dermaceuticals*, 709 F.3d at 47. Other than Exhibit 16, Jazz's exhibits are not in the administrative record, and Jazz has not met its burden to show that the record should be completed or supplemented with them. *See infra* pp. 12–24. Thus, the exhibits may not be considered in resolving Jazz's APA claim.

Jazz's "before [the agency] in one sense or another" standard, Jazz Br. 7, would render administrative records virtually unbounded. For example, Jazz claims that certain exhibits were "'before FDA' because they were submitted to, and reviewed by, the same FDA officials who participated in the decision below." Jazz Br. 9. One such official was Dr. Ranjit Mani, who "has more than 20 years of experience regulating oxybate," and Jazz seeks to introduce exhibits that were cited in Exhibit 41, an Efficacy Review of New Drug Application for Xyrem that Dr. Mani wrote on June 15, 2001. *Id.* However, to include in the record every document reviewed by Dr. Mani over the past 20-plus years, along with every document reviewed by other relevant FDA officials, would be entirely impractical, if not impossible, and would expand the record far beyond its proper scope of "all documents and materials that the agency directly or indirectly considered" in reaching the decision at issue. *Swisher Int'l*, 2023 WL 6460028, at *3; *see* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142; *Hill Dermaceuticals*, 709 F.3d at 47. In fact, Jazz does not actually seek to present the Court with all documents "before [the agency] in one sense or another," but offers that standard instead to support its cherry-picking

9

the documents it wants to use to support its position, even when those documents were not in fact considered by the agency decisionmaker.

### D. Federal Defendants would be prejudiced by the Court's consideration of documents that Jazz failed to present to the agency

Jazz argues that issue exhaustion principles do not bar its reliance on the Griffin Declarations and the attachments and exhibits thereto. Jazz Br. 18–22. As an initial matter, Federal Defendants did not argue that the doctrine of issue exhaustion necessarily prohibits Jazz from relying on these documents. Instead, Federal Defendants cited issue exhaustion principles to explain how they would be prejudiced by the Court's consideration of documents that Jazz never presented to the agency in connection with the decision at issue (even if Jazz cited certain exhibits in connection with its own applications, *see* Jazz. Br. 19). FDA Br. 11–13. Jazz had ample procedural and temporal opportunity to submit the Griffin Declarations and their attachments and exhibits to the agency. Jazz had been in communication with FDA since 2021 about whether Xywav's orphan-drug exclusivity blocked approval of Lumryz. During those communications, the company provided FDA with supporting materials, such as Exhibit 16, which were considered by FDA and included in the administrative record. *See* AR851–1021; *see also* AR1240–88; AR1291–342. Jazz also could have availed itself of FDA's citizen petition process to submit further information. *See, e.g.*, 21 C.F.R. §§ 10.25(a), 10.30. By failing to submit its exhibits to FDA, Jazz denied the agency the opportunity to consider them in making its decision.

PUBLIC VERSION

*Sandoz Inc. v. Becerra*, 57 F.4th 272 (D.C. Cir. 2023), is not to the contrary. *See* Jazz Br.

20. *Sandoz* recognized that "determining whether to require administrative exhaustion

is 'intensely practical' and turns on 'both the nature of the claim presented and the

characteristics of the particular administrative procedure provided.'" 57 F.4th at 278

(quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). The question in *Sandoz* was

whether the plaintiff had to exhaust a legal argument about statutory interpretation. *Id.*

at 277. The court declined to impose an issue exhaustion requirement, in part because

the unexhausted issue was "a question of law" that did "not require the development of

a factual record," such that "Sandoz's failure to present the issue to the agency [did] not

bar adequate consideration by th[e] court." *Id.* at 279 (quotations omitted). Here, by

contrast, Jazz uses the Griffin Declarations and the attachments and exhibits thereto to

support its *factual* arguments. *See supra* pp. 6–8. And those are precisely the kinds of

arguments that an agency should "develop" and consider in the first instance. *McKart v.*

*United States*, 395 U.S. 185, 193–94 (1969).

Finally, the potential exceptions to exhaustion set out in *McCarthy*—which

addressed exhaustion of administrative remedies rather than issue exhaustion—do not

apply here. *Contra* Jazz Br. 21–22. First, there was not "an unreasonable or indefinite

timeframe for administrative action." *McCarthy*, 503 U.S. at 147. Jazz could have

included its exhibits in any communications to FDA on this matter between September

2021 and January 2023, AR851–1021; AR1240–88; AR1291–342, and FDA would have

considered them before reaching the May 2023 decision, AR522–96; AR1343–84, just as

11

it did the exhibits that Jazz attached to its communications that are in the record, AR851–1021; AR1240–88.[3]

Second, Jazz's bare assertions that "FDA has violated [its] right to exclusivity and subjected [it] to unlawful competition," Jazz Br. 21, do not show that it will "suffer irreparable harm if unable to secure immediate judicial consideration of [its] claim," *McCarthy*, 503 U.S. at 147. Jazz has not requested preliminary relief to avert any alleged irreparable harm, nor presented any evidence that it faces such harm. Finally, Jazz has not shown that FDA is "biased or has otherwise predetermined the issue before it." *Id.* at 148. FDA reached a reasoned decision based on the record before it and has not an appropriate opportunity to consider the new materials that Jazz seeks to place before the Court because Jazz failed to submit those materials to the agency. *Contra* Jazz Br. 22.

## II.  The Court should deny Jazz's motion to complete and supplement the record

When moving for summary judgment on September 15, 2023, Jazz deliberately chose to proceed under the existing administrative record rather than seek to complete or supplement the record, as it had threatened to do several weeks earlier. Griffin Decl. at 51. Possibly regretting that choice, Jazz tried to reverse course on November 15, 2023, by filing a "Protective Motion to Complete and Supplement the Record." This "protective" motion is an improper attempt to change litigation tactics and expand the

---

[3] Other than Exhibits 5–7 and 43, all of Jazz's exhibits predate FDA's May 2023 decision. Exhibits 5–7 are FDA webpages relating to the agency's organization. Although the versions of the webpages attached as exhibits were updated after May 2023, Jazz could have submitted earlier versions of these webpages to FDA. Exhibit 43 is a scientific article that, though published on September 27, 2023, is similar to many of the scientific article exhibits that predate May 2023.

PUBLIC VERSION

record right in the middle of summary judgment briefing and after all parties had filed their first merits brief. The Court should not countenance Jazz's gamesmanship.

Even if the Court considers Jazz's motion, the motion should be denied. Jazz has not met its burden to complete the record because it has not introduced concrete evidence showing that the documents at issue were directly or indirectly considered by the decisionmaker.[4] Jazz also has not met its burden to supplement the record because it has not shown unusual circumstances justifying a departure from the general rule that judicial review is limited to the administrative record.

### A. The Court should hold Jazz to its choice to move for summary judgment on the existing administrative record

Despite threatening motion practice to "complete the record" in its letter of August 22, 2023, Griffin Decl. at 51—a recognition that Jazz knew the proper procedure to introduce the documents at issue—Jazz chose not to do so. Instead, on September 15, 2023, Jazz moved for summary judgment on the administrative record compiled by FDA because it "believes" that record is "more than sufficient" for APA review. MSJ 15 n.6. Jazz's newly minted argument that its reference to "the available records" referred to "all of the records cited in [its] brief," Jazz Br. 33, is implausible in context, and does

---

[4] The parties' briefing distinguishes between "completion" of the record with material that should have been included in the record because it was directly or indirectly considered by the decisionmaker, and "supplementation" of the record with extra-record material that was not considered by the decisionmaker. *See Swisher Int'l*, 2023 WL 6460028, at *3–4. Certain cases draw the same distinction using different terminology, distinguishing between "supplementation" of the record with "information that should have properly been included in the administrative record," and "consideration of extra-record evidence." *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009).

PUBLIC VERSION

not change the fact that Jazz made the *litigation choice* not to follow through on its threat to seek to complete the record.

"Courts have long recognized that litigants," especially sophisticated parties with sophisticated counsel, "must bear the consequences of their attorneys' strategic decisions." *Wilson v. DNC Servs. Corp.*, 831 F. App'x 513, 515 (D.C. Cir. 2020); *see St. Augustine Sch. v. Underly*, 78 F.4th 349, 360 (7th Cir. 2023) ("Litigants are held to their choices, even when the consequences are harsh."); *McKinley v. Fed. Deposit Ins. Corp.*, No. 1:15-CV-1764 (KBJ), 2018 WL 11260466, at *1 (D.D.C. Sept. 30, 2018) (Jackson, J.) ("McKinley previously disclaimed any reliance on an argument regarding the adequacy of the FDIC's search, and thus, he has waived this argument." (citations omitted)); *In re Gibrick*, No. 12 A 1195, 2015 WL 965939, at *6 (Bankr. N.D. Ill. Feb. 25, 2015) ("parties should be held to their strategic decisions"). To allow parties to escape the consequences of their strategic choices "would violate Federal Rule[] of Civil Procedure 1, and would open the flood gates to prolonged do-over litigation." *In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-JSC, 2023 WL 6301063, at *9 (N.D. Cal. Sept. 26, 2023). Here, Jazz made the strategic choice to seek summary judgment on the existing administrative record and should be held to that choice.

Jazz characterizes its "protective" motion as simply a response to Avadel's forfeiture arguments. Jazz Br. 34. But that is no excuse. Jazz could have filed its motion to complete and supplement the record before or concurrently with its summary judgment motion. Indeed, Jazz threatened such motion practice several weeks before moving for summary judgment. Griffin Decl. at 51.

14

Jazz's attempt to expand the administrative record in the middle of summary judgment briefing is not only inefficient, *see* Fed. R. Civ. P. 1; *In re Qualcomm Antitrust Litig.*, 2023 WL 6301063, at *9, but also unfair to Federal Defendants. Federal Defendants prepared their first merits brief based on the administrative record produced by the agency, which at the time was unchallenged. Although Federal Defendants discussed some of the exhibits to the first Griffin Declaration in their first merits brief, they may have approached those documents differently if Jazz had properly sought to add them to the record. Moreover, Federal Defendants' first merits brief could not address the exhibits to the second Griffin Declaration because that declaration had not yet been filed. Thus, Jazz's attempt to alter the scope of the record after Federal Defendants filed their first merits brief prejudices Federal Defendants and should be denied.

### B.  Jazz has not met its burden to complete the record with Exhibits 1, 3, 4, 8, 10–14, 17–22, 24–30, 32, 34, 38, 39, and 44–47

Even if Jazz were permitted to reverse course and make a belated attempt to expand the record, its motion to complete the record should be denied.[5] "[A]n agency is entitled to a strong presumption of regularity that it properly designated the administrative record." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) (quotations omitted). "[T]o rebut the presumption of regularity," parties seeking to complete the record must "introduce non-speculative, concrete evidence to support

---

[5] Jazz does not seek to complete the record with Exhibits 2, 5–7, 9, 15–16, 23, 31, 33, 35–37, or 40–43.

PUBLIC VERSION

their belief that the specific documents allegedly missing from the administrative record were directly or indirectly considered by the actual decision makers involved in the challenged agency action." *Id.*

A plaintiff "cannot meet its burden" to complete the record "simply by asserting that the documents are relevant, were before or in front of the [agency] at the time it made its decision, and were inadequately considered." *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6. Moreover, "the relevant inquiry here is not what the plaintiff believes the agency should have considered prior to making its decision," because that is "wholly irrelevant to what the agency actually *did* consider during the time period at issue." *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 166 (D.D.C. 2014) (emphasis in original); *see Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008).

### 1. Jazz has not shown that the FDA-created documents were directly or indirectly considered by the decisionmaker

Jazz argues that Exhibits 4, 8, 10, 12, 14, 26, 27, 38, and 44–47 were "before the agency" because they were created by FDA (either by the Review Division or another FDA office) and are allegedly relevant to the decision at issue. Jazz Br. 28–29. That is insufficient to add these documents to the record. *See Pac. Shores Subdivision*, 448 F. Supp. 2d at 6. Courts often use the phrase "before the agency" synonymously with the "directly or indirectly considered" standard. *See, e.g., Silver State Land*, 59 F. Supp. 3d at 168 (referring to "the materials [that] were before [the agency]—namely, were directly or indirectly considered" (quoting *Pac. Shores Subdivision*, 448 F. Supp. 2d at 5)); *The Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 114. To complete the record, Jazz must

"introduce non-speculative, concrete evidence" indicating that its exhibits "were directly or indirectly considered by the actual decision makers involved in the challenged agency action." *Dist. Hosp. Partners*, 971 F. Supp. 2d at 20. Jazz has not met that burden.

Jazz's reliance on *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64 (D.D.C. 2008), and *Fund for Animals v. Williams*, 391 F. Supp. 2d 191 (D.D.C. 2005), *see* Jazz. Br. 28, is misplaced. Those cases relied on *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*, 751 F.2d 1287 (D.C. Cir. 1984), *aff'd on reh'g en banc*, 789 F.2d 26 (D.C. Cir. 1986), which stated that supplementation with "extra-record evidence" might be required "if petitioners made a prima facie showing that the agency excluded from the record evidence adverse to its position." *Id.* at 1327; *see Cnty. of San Miguel*, 587 F. Supp. 2d at 72; *Fund for Animals*, 391 F. Supp. 2d at 198. Subsequent D.C. Circuit precedent, however, has narrowed this standard to whether "the agency deliberately or negligently excluded documents that may have been adverse to its decision," *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010), which requires a "strong showing of [agency] bad faith," *Level the Playing Field v. Fed. Election Comm'n*, 381 F. Supp. 3d 78, 90 (D.D.C. 2019), *aff'd*, 961 F.3d 462 (D.C. Cir. 2020) (quoting *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015)). Jazz has not made that showing. *See infra* p. 23.

PUBLIC VERSION

**2. Jazz has not shown that exhibits cited by documents in the record were directly or indirectly considered by the decisionmaker**

Jazz argues that Exhibits 1,[6] 3, 10, 11, 13, 14,[7] 17, 19, 22, 24, 25, 28, 29, 30, 32, 34, and 39 were cited by documents in the record.[8] But "references to documents in the administrative record do not prove that the documents were 'before' the deciding agency." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 80 (D.D.C. 2010); *see The Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 114 ("despite the references to the [biological opinion] in many documents that were contained in the administrative record, this too does not prove that it was before the agency when it made its decision"); *see also City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 289–90 (D.D.C. 2013) (although the administrative record included a Notice of Violation issued by another agency, "there is no evidence that the [defendant agency] considered the record of material underlying the [Notice of Violation]," and thus that underlying record was "not properly part of the administrative record").

---

[6] Jazz argues that "OOPD alluded to [Exhibit 1] in its decision letter." Jazz Br. 27 (citing AR1365 n.147). That is incorrect. The documents OOPD referenced are included in the record. AR1477–78; AR1554–58.

[7] For Exhibits 3, 13, and 14, Jazz argues that "[p]rior versions" of these exhibits, not the exhibits themselves, were cited in submissions to FDA. Jazz Br. 28.

[8] Jazz argues that Avadel provided Exhibits 17, 24, and 34 to FDA and hyperlinked them in its submissions. Jazz Br. 7–8. But even if those exhibits were in FDA's possession, that does not show they were directly or indirectly considered by the agency decisionmaker. *See* pp. 15–17, 20–21. Moreover, FDA did not "delete" these documents, Jazz Br. 7, but instead assembled the record based on what the decisionmaker directly or indirectly considered.

Courts "have rejected the argument that if a document considered by the agency
decision-maker refers to other documents, those underlying documents must be
included in the record because this argument stretches the chain of indirect causation to
its breaking point and cannot be a basis for compelling completion of an Administrative
Record." *Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 898 (D. Ariz.
2021) (quotations omitted). Rather than "merely argu[ing] that" certain materials are
"mentioned in the record," plaintiffs "must offer non-speculative grounds for their
belief that the [agency] actually considered [those] materials." *Marcum*, 751 F. Supp. 2d
at 80–81; *see Save the Colorado*, 517 F. Supp. 3d at 899 ("[D]ocuments merely referenced
or cited in another document in the administrative record" cannot be added to the
record "without clear evidence that these were considered by the agency."). Here, Jazz
fails to "offer non-speculative grounds for [its] belief that [FDA] actually considered"
the exhibits at issue. *Marcum*, 751 F. Supp. 2d at 80–81; *see Save the Colorado*, 517 F. Supp.
3d at 899.

Taken to its logical conclusion, Jazz's position that the administrative record should
include every document referenced in each document in the record would spawn
records of unmanageable proportions. The record FDA compiled in this case spans 2271
pages and contains scientific articles and agency memoranda dating back to the 1990s.
*See, e.g.*, AR1431–32; AR1433–37; AR1968–73. To add all documents referenced in the
current record would result in a massive record that is far removed from what the
agency decisionmaker actually considered. Of course, as discussed above, Jazz is not

actually requesting a neutral record-compilation process; it just wants to include the cherry-picked documents it believes are favorable.

Jazz argues that certain exhibits "were discussed in the record, sometimes extensively," Jazz Br. 7, but that is insufficient to include those exhibits in the record. In *The Cape Hatteras Access Preservation Alliance v. U.S. Department of Interior*, the administrative record included an interim strategy document, 667 F. Supp. 2d at 115, but not a biological opinion that "was heavily relied upon in preparation of" that interim strategy document and "much of the relevant information from [which] was included in" that document, *id.* at 114. Nonetheless, the court concluded that these facts did not "overcome the strong presumption that [the agency] properly designated the administrative record, and the plaintiffs ha[d] not introduced any concrete evidence that the [biological opinion] was before the agency." *Id.* The same logic applies here: even if documents in the administrative record included information from Jazz's exhibits, or "heavily relied" on them, that does not provide the necessary "concrete evidence" that those exhibits were directly or indirectly considered by the agency decisionmaker. *Id.*

### 3. Jazz has not shown that the documents submitted to relevant FDA officials in other contexts were directly or indirectly considered by the decisionmaker

Jazz argues that Exhibits 17–22, 24, 25, 29–31, 33, 34, and 36 "were previously submitted by Jazz to the Review Division in connection with Jazz's requests to market or study twice-nightly oxybate as a treatment for disrupted nighttime sleep." Jazz Br. 28–29. Notably, Jazz submitted these documents to FDA, not in connection with the

decision at issue, but for its own drug applications. The documents Jazz attached to its communications to FDA in connection with the decision at issue (including Exhibit 16) were included in the administrative record. AR851–1021; AR1240–88; AR1291–342. In any event, even if Jazz's exhibits were somewhere in the Review Division's files, Jazz would still need to "offer 'reasonable, non-speculative' grounds for its belief that the documents were directly or indirectly *considered* by" FDA in connection with the decision at issue. *City of Duluth*, 968 F. Supp. 2d at 289 (emphasis in original) (quoting *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6). Jazz has not done so.

Jazz cites *Kent County, Delaware Levy Court v. EPA*, 963 F.2d 391 (D.C. Cir. 1992), *see* Jazz Br. 29, but that case is inapposite. *Kent County* applied the standard for supplementing, not completing, the record, and it ordered supplementation based on a fact-specific finding that the agency had been negligent in searching its records in connection with the decision under review. *Kent Cnty.*, 963 F.2d at 396. Jazz has made no similar showing here. Moreover, although the passage quoted by Jazz relates to whether certain documents are relevant, Jazz. Br. 29, it is well established that relevance is insufficient to show that documents were considered by the decisionmaker, *see Pac. Shores Subdivision*, 448 F. Supp. 2d at 6.

### C.  Jazz has not met its burden to supplement the record with Exhibits 1, 3–8, 10, 11, 13–39, and 43–47

Even if Jazz's belated attempt to supplement the record were permitted, its motion should be denied.[9] Courts "do not allow parties to supplement the record unless they

---

[9] Jazz does not seek to supplement the record with Exhibits 2, 9, 12, or 40–42.

can demonstrate unusual circumstances justifying a departure from th[e] general rule" that judicial review is limited to the administrative record. *City of Dania Beach*, 628 F.3d at 590 (quotations omitted); *see Marcum*, 751 F. Supp. 2d at 78 ("When reviewing an agency decision, a court will go beyond the agency's record only in exceptional cases."). These "narrow" unusual circumstances are limited to when "the procedural validity of the [agency]'s action . . . remains in serious question" due to "gross procedural deficiencies." *Hill Dermaceuticals*, 709 F.3d at 47 (alterations in original) (quotations omitted). The D.C. Circuit has identified three such unusual circumstances: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach*, 628 F.3d at 590 (quotations omitted). None of these circumstances is present here.

As an initial matter, Jazz has not shown that "the procedural validity of [FDA]'s action . . . remains in serious question" due to "gross procedural deficiencies." *Hill Dermaceuticals*, 709 F.3d at 47 (alterations in original); *see* FDA Cross-MSJ 22–33; FDA Cross-MSJ Reply 15–22. Jazz can find no solace in this Court's statement that "where the district court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence." *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 4 (D.D.C. 2017); Jazz Br. 30. That statement was summarizing—not purporting to modify—the D.C. Circuit's holding that "district courts may consult extra-record evidence when the

PUBLIC VERSION

procedural validity of the [agency's] action . . . remains in serious question," and that
this exception can be relied upon, "at most[,] . . . to challenge *gross* procedural
deficiencies." *United Student Aid Funds*, 237 F. Supp. 3d at 4 (quoting *Hill Dermaceuticals*,
709 F.3d at 47) (alterations in original) (internal quotation marks omitted).

Jazz also has not shown that FDA "deliberately or negligently excluded documents
that may have been adverse to its decision." *City of Dania Beach*, 628 F.3d at 590
(quotations omitted). This requires Jazz to make a "strong showing of [agency] bad
faith." *Level the Playing Field*, 381 F. Supp. 3d at 90 (quoting *Dist. Hosp. Partners, L.P.*, 786
F.3d at 55). Jazz has not come close to making that showing, and its "conclusory"
statements "fall short of that high threshold." *Id.* (quoting *Dist. Hosp. Partners,* 786 F.3d
at 55) (cleaned up). It is not enough simply to assert that the exhibits were in FDA's
possession and "undercut" OOPD's reasoning. Jazz Br. 29–30. *But see* FDA Cross-MSJ
22–33; FDA Cross-MSJ Reply 15–22.

Finally, Jazz has not shown that "background information [is] needed to determine
whether the agency considered all the relevant factors." *City of Dania Beach*, 628 F.3d at
590 (cleaned up). A plaintiff must "point out an entirely new general subject matter that
[the agency] failed to consider." *Oceana,* 454 F. Supp. 3d at 70 (quotations omitted). "In a
complicated, scientific analysis," those "general subject matter[s]" can be "the
intermediary evidentiary factors which lead to the ultimate conclusion." *Id.*

Jazz asserts that the scientific article exhibits show that twice-nightly oxybate
therapy has benefits for patients with narcolepsy. Jazz Br. 31. But FDA did not fail to
consider that point. Instead, FDA considered the benefits of Xywav, *see, e.g.*, AR536–40;

PUBLIC VERSION

AR550–74, while ultimately concluding that Lumryz, taken once a night, makes a major contribution to patient care, AR550–52; AR565.

Jazz also asserts that Exhibits 37 and 43 "suggest[] *equivalence* (not superiority) between once- and twice-nightly dosing when it comes to the sleep of patients with narcolepsy." Jazz Br. 31. But as Jazz concedes, FDA considered the "comparison of the impacts that Xywav and Lumryz have on sleep." Jazz Br. 31. This comparison is one of "the intermediary evidentiary factors" that led to FDA's "ultimate conclusion" that Lumryz makes a major contribution to patient care. *Oceana*, 454 F. Supp. 3d at 70. Thus, Jazz has not identified "an entirely new general subject matter that [FDA] failed to consider." *Id.* (quotations omitted).

Jazz may disagree with FDA's scientific findings based on that comparison—that once-nightly dosing provides an opportunity for narcolepsy patients to achieve normal sleep architecture and is inherently more convenient, easier, and less burdensome for patients with narcolepsy, AR550–52—but all that matters is FDA conducted the comparison. *See Oceana*, 454 F. Supp. 3d at 70 (a party's factual "disagree[ment] with the agency" is not a reason to consider "extra-record evidence" (cleaned up)). Furthermore, because FDA adequately explained how it compared the impacts that Xywav and Lumryz have on sleep, AR550–52, there is no need for extra-record evidence. *See Level the Playing Field*, 381 F. Supp. 3d at 90.

## CONCLUSION

The Court should grant Federal Defendants' motion to strike the two Griffin Declarations and the attachments and exhibits thereto, as well as deny Jazz's Protective

24

PUBLIC VERSION

Motion to Complete and Supplement the Record. The Court should also order Jazz to

refile its Motion for Summary Judgment and its Combined Reply in Support of

Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Motions for

Summary Judgment, removing any citation to or reliance on the two Griffin

Declarations and their attachments and exhibits and making no other changes.


December 22, 2023                              Respectfully submitted,

                                              */s/ Isaac C. Belfer*
                                              NOAH T. KATZEN (D.C. Bar No. 1006053)
                                              ISAAC C. BELFER (D.C. Bar No. 1014909)
                                              Trial Attorneys
                                              Consumer Protection Branch
                                              Civil Division
                                              U.S. Department of Justice
                                              P.O. Box 386
                                              Washington, DC 20044-0386
                                              (202) 305-2428 (Katzen)
                                              (202) 305-7134 (Belfer)
                                              (202) 514-8742 (fax)
                                              Noah.T.Katzen@usdoj.gov
                                              Isaac.C.Belfer@usdoj.gov

                                              *Attorneys for Federal Defendants*