# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAZZ PHARMACEUTICALS, INC.,

        *Plaintiff,*

    v.

XAVIER BECERRA, Secretary of Health
and Human Services; U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES;
ROBERT CALIFF, Commissioner of Food
and Drugs; U.S. FOOD AND DRUG
ADMINISTRATION,

        *Defendants,*

AVADEL CNS PHARMACEUTICALS,
LLC,

        *Intervenor-Defendant.*

Case No. 1:23-cv-1819-APM

Filed under seal

## REPLY IN SUPPORT OF PLAINTIFF'S PROTECTIVE
## MOTION TO COMPLETE AND SUPPLEMENT THE RECORD

Kwaku A. Akowuah (D.C. Bar No. 992575)
Sean C. Griffin (D.C. Bar No. 499537)
Tobias S. Loss-Eaton (D.C. Bar No. 1019749)
Peter A. Bruland (D.C. Bar No. 1600717)
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005
T: (202) 736-8000
F: (202) 736-8711
kakowuah@sidley.com
sgriffin@sidley.com
tlosseaton@sidley.com
pbruland@sidley.com

*Counsel for Plaintiff Jazz Pharmaceuticals Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

ARGUMENT ..................................................................................................................... 3

I.  The Protective Motion is timely and proper. ......................................................... 3

    A.  Jazz was not required to file the protective motion earlier ........................... 3

    B.  Neither FDA nor Avadel has been prejudiced. ............................................. 5

    C.  Jazz did not forfeit the right to rely on the exhibits. .................................... 8

II.  The Court should complete the record. .................................................................. 9

    A.  The record must include all documents that were "before the agency," meaning "all materials that might have influenced the agency's decision." ................. 9

    B.  The record should be completed with Exhibits 1, 3–14, 17–22, 24–34, 36, 38–39, and 44–47 because they were before the agency. ...................................... 12

III.  The Court should supplement the record. ........................................................... 17

    A.  FDA at least negligently excluded articles attached to Avadel's submissions in the proceeding below. ........................................................................ 17

    B.  The record does not show whether FDA complied with its procedural obligations ................................................................................................ 19

    C.  Background information is needed to determine whether FDA considered all relevant factors. .......................................................................................... 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Metals Coal. v. Whitman*,
227 F. Supp. 2d 134 (D.D.C. 2002) .................................................................................. 10

\* *Am. Wildlands v. Kempthorne*,
530 F.3d 991 (D.C. Cir. 2008) ...................................................................................... 9, 10

*Banner Health v. Burwell*,
126 F. Supp. 3d 28 (D.D.C. 2015) .................................................................................... 4

*Banner Health v. Price*,
867 F.3d 1323 (D.C. Cir. 2017) ........................................................................................ 4

\* *Catalyst Pharms., Inc. v. Azar*,
2020 WL 4573068 (S.D. Fla. May 1, 2020) ..................................................................... 4

\* *City of Dania Beach v. FAA*,
628 F.3d 581 (D.C. Cir. 2010) ........................................................................... 14, 17, 19

\* *Cnty. of San Miguel v. Kempthorne*,
587 F. Supp. 2d 64 (D.D.C. 2008) .................................................................................. 14

*Daniel v. Smoot*,
287 F. Supp. 3d 74 (D.D.C. 2018) .................................................................................. 18

*Dist. Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) .......................................................................................... 18

\* *Dist. Hosp. Partners, L.P. v. Sebelius*,
971 F. Supp. 2d 15 (D.D.C. 2013) ............................................................................... 3, 10

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005) ................................................................................ 14

\* *Genus Lifesciences, Inc. v. Azar*,
2021 WL 270409 (D.D.C. Jan. 27, 2021) ............................................................ 10, 11, 13

*In re Gibrick*,
2015 WL 965939 (Bankr. N.D. Ill. Feb. 25, 2015) ......................................................... 4

*Ipsen BioPharms., Inc. v. Becerra*,
2023 WL 3319366 (D.D.C. May 8, 2023) ...................................................................... 15

*James Madison Ltd. v. Ludwig,*
  82 F.3d 1085 (D.C. Cir. 1996) ...................................................................................18

* *Kent Cnty. v. EPA,*
  963 F.2d 391 (D.C. Cir. 1992) .....................................................................................18

*McKinley v. FDIC,*
  2018 WL 11260466 (D.D.C. Sept. 30, 2018) ..............................................................4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) .......................................................................................................20

*Nat'l Shooting Sports Found., Inc. v. Jones,*
  716 F.3d 200 (D.C. Cir. 2013) .....................................................................................20

*Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs,*
  2002 WL 34724414 (D.D.C. Oct. 8, 2002) .................................................................21

*NRDC v. Doremus,*
  2021 WL 2322349 (D.D.C. June 7, 2021) ...................................................................10

* *Oceana, Inc. v. Ross,*
  290 F. Supp. 3d 73 (D.D.C. 2018) ...............................................................................11

* *Oceana, Inc. v. Ross,*
  454 F. Supp. 3d 62 (D.D.C. 2020) ...............................................................................20

*Georgia ex rel. Olens v. McCarthy,*
  833 F.3d 1317 (11th Cir. 2016) ...................................................................................16

*Plaut v. Spendthrift Farm, Inc.,*
  514 U.S. 211 (1995) .......................................................................................................4

*Priority One Servs., Inc. v. W & T Travel Servs., LLC,*
  987 F. Supp. 2d 1 (D.D.C. 2013) .................................................................................18

*In re Qualcomm Antitrust Litig.,*
  2023 WL 6301063 (N.D. Cal. Sept. 26, 2023) ..............................................................4

*Sadeghzadeh v. USCIS,*
  322 F. Supp. 3d 12 (D.D.C. 2018) .................................................................................7

*Sandoz Inc. v. Becerra,*
  57 F.4th 272 (D.C. Cir. 2023) ........................................................................................7

*Sierra Club v. Jackson,*
  648 F.3d 848 (D.C. Cir. 2011) .....................................................................................18

*St. Augustine Sch. v. Underly,*
   78 F.4th 349 (7th Cir. 2023) ............................................................................ 4

*Sw. Ctr. for Biological Diversity v. Babbitt,*
   131 F. Supp. 2d 1 (D.D.C. 2001) ............................................................ 20, 21

*United States v. Diapulse Corp. of Am.,*
   748 F.2d 56 (2d Cir. 1984) ............................................................................ 16

\* *United Student Aid Funds, Inc. v. Devos,*
   237 F. Supp. 3d 1 (D.D.C. 2017) .................................................................. 18

*Walter O. Boswell Mem'l Hosp. v. Heckler,*
   749 F.2d 788 (D.C. Cir. 1984) ...................................................................... 10

*WildEarth Guardians v. Salazar,*
   670 F. Supp. 2d 1 (D.D.C. 2009) .................................................................. 11

*Wilson v. DNC Servs. Corp.,*
   831 F. App'x 513 (D.C. Cir. 2020) ................................................................ 4

**Statutes**

5 U.S.C. § 706 ............................................................................................... 2, 9

21 U.S.C. § 355(b)(2) ...................................................................................... 15

**Other Authority**

S. Rep. No. 79-752 (1945) .............................................................................. 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

Jazz filed the Protective Motion, ECF No. 65, to explain an alternative basis for the Court to consider the Exhibits referenced in its summary-judgment briefs. It was filed as an alternative to Jazz's earlier motion for judicial notice, ECF No. 37, and in response to FDA's and Avadel's cross-motions to strike, *see* ECF Nos. 42 and 48. FDA and Avadel argued that judicial notice can *never* be taken in an APA case and that *any* request for the Court to consider *any* "extra-record" source must be captioned as a motion to complete or supplement the record. Jazz has already explained why that is wrong: Judicial notice *of the defendant agency's own materials* is appropriate in APA cases, and an APA plaintiff has the right to cite legal authority—including agency precedents, rules, and statements— without regard to the record rule. *See* ECF No. 60 at 4–7 ("Jazz Mot").

Thus, if the Court grants Jazz's motion for judicial notice, most of the questions presented by the Protective Motion will be moot. And, of course, the Court need not address *any* of these motions if it agrees with Jazz's lead argument that FDA violated the governing statute by breaking the unexpired orphan-drug exclusivity protecting Jazz's drug, Xywav®.

Regardless, the Exhibits are also properly before the Court under the standards for completing or supplementing the record. FDA's and Avadel's lead arguments to the contrary are not about the contents of the Exhibits, but about timing and process. Both argue that the Protective Motion is untimely because it was filed in response to their motions to strike (rather than along with Jazz's first brief). But no statute, rule, precedent, or order imposed a deadline for the Protective Motion. Nor is there any credible claim of prejudice: All the Exhibits were presented with Jazz's summary-judgment briefs; FDA and Avadel had ample opportunity to address them in their own summary-judgment briefs; and they in fact did so. In truth, parties often move to complete or supplement the record after summary-judgment briefing has begun (or even is complete). And it is disappointing that FDA

continues to insist falsely that Jazz's opening summary-judgment brief declared the existing record sufficient or otherwise waived the right to rely on the Exhibits cited *in that same brief*.

On the merits, the Court should complete and supplement the record. With respect to completion, many of the Exhibits were before FDA at the time of the challenged decision in a heartland sense of the term—they were presented by Jazz and Avadel to FDA specifically for the agency's consideration in connection with the decision below; presented by Jazz in connection with related adjudications and conceded to be "in the Review Division's files," FDA Opp. 20; and/or are materials that FDA itself created, including agency precedents and rules. *See* Section II(B), *infra*. Those materials are necessarily part of the "whole record" that 5 U.S.C. § 706 says must be available for judicial review, and blackletter law holds that the record is not complete unless it contains *all* such materials—not just those materials on which the agency chose to rely. In response, FDA and especially Avadel misstate the legal standard, declaring that only documents on which the agency "substantively relied" are properly included. That has never been the law because it would frustrate judicial review, which in the APA context often involves asking whether the agency adequately considered arguments or evidence available to the agency that the agency's decision does not expressly address. Beyond that, FDA and Avadel generally assert that the agency's decisionmakers did not consider these documents, but every reasonable inference is to the contrary.

In addition, "unusual circumstances" justify supplementing the record. Those circumstances include (1) FDA's unexplained and inexplicable decision to exclude materials that Jazz and Avadel cited or submitted in the informal process below; (2) FDA's unprecedented decision to enlist *device* reviewers to decide whether one *drug* is clinically superior to another; and (3) FDA's failure to meaningfully articulate and rationally consider the relevant scientific factors when comparing the two drugs at issue. *See* Section III, *infra*. In claiming otherwise, FDA and Avadel again misstate the law,

and they cannot rebut Jazz's showing that the circumstances of this case warrant supplementing the record.

## ARGUMENT

### I.     The Protective Motion is timely and proper.

FDA and Avadel say Jazz had to file any motion to complete or supplement the record "before or concurrently with its summary judgment motion." ECF No. 75 at 14 ("FDA Opp."); *accord* ECF No. 73 at 2 ("Avadel Opp."). Their arguments lack merit.

#### A.     Jazz was not required to file the protective motion earlier.

No authority holds that a motion to complete or supplement the administrative record must be submitted before or with the opening summary-judgment brief. And at least one court in this district has rejected an agency's argument that a motion to supplement was "untimely because the plaintiffs waited until mid-way through summary judgment briefing" to file it. *See Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 21 (D.D.C. 2013).[1]

The *Catalyst* litigation underscores the point. When the *Catalyst* plaintiff moved for summary judgment, it included a declaration "authenticating certain documents that FDA has refused to include in the administrative record" and another declaration from counsel "describing Plaintiff's efforts to obtain the documents … through the meet-and-confer process." Mot. for Summary Judgment at 2–3, *Catalyst Pharms., Inc. v. FDA*, No. 1:19-cv-22425 (S.D. Fla., Dec. 18, 2019), ECF No. 38. Unlike here, the plaintiff's brief was not accompanied by a motion (for judicial notice or otherwise) asking the Court to consider those extra-record materials. Like here, FDA moved to strike the declarations and their exhibits when it cross-moved for summary judgment. *See* Fed. Defendants' Mot. to Strike, *Catalyst Pharms., Inc. v. FDA*, No. 1:19-cv-22425 (S.D. Fla., Jan. 18, 2020), ECF No. 48. Also like here, the

---

[1] FDA ignores *District Hospital* altogether. Avadel observes that any delay in that case was "harmless," Avadel Opp. 3 n.1—but that was because the plaintiffs had cited the materials in their opening summary-judgment brief, which is true here too. *See Dist. Hosp.*, 971 F. Supp. 2d at 21.

plaintiff responded to FDA's motion to strike by moving to complete or supplement the record. *See* Cross-Mot. to Complete and/or Supplement the Administrative Record, *Catalyst Pharms., Inc. v. FDA*, No. 1:19-cv-22425 (S.D. Fla., Jan. 31, 2020), ECF No. 55. FDA apparently never challenged the plaintiff's motion as untimely, and it was ultimately granted in part. *See Catalyst Pharms., Inc. v. Azar*, No. 1:19-cv-22425, 2020 WL 4573068, at *4–5 (S.D. Fla. May 1, 2020). The attorneys who filed that motion to complete the record represent Avadel here.

FDA's cited cases, by contrast, "distinguish themselves." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 232 (1995). Most are not administrative-record cases, and none states a proposition more relevant than the general notion that there are *some* litigation decisions that a party cannot take back, such as affirmative waivers and choices not to act before a court-imposed deadline.[2] For its part, Avadel cites only *Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017), which merely found no abuse of discretion where the district court had deemed "tardy" a second round of motions to supplement the record that had been filed *three years after* the court's deadline for such motions, *two years after* the court had resolved those motions, and *a year after* the court had ruled on a motion to reconsider or clarify. *See Banner Health v. Burwell*, 126 F. Supp. 3d 28, 60–61 (D.D.C. 2015). None of that has happened here, and contra FDA, Jazz does not seek any kind of "do-over." *Contra* FDA Opp. 14 (citation omitted). The Protective Motion merely responds to arguments raised by Avadel and FDA and presents alternative grounds to

---

[2] *See Wilson v. DNC Servs. Corp.*, 831 F. App'x 513, 515 (D.C. Cir. 2020) (per curiam) (district court did not err by refusing to reopen fully completed discovery in a civil-rights action, where plaintiff's counsel had "made a tactical decision not to" pursue the relevant topic); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 351, 360 (7th Cir. 2023) (at the remedy phase of civil rights litigation, plaintiff could not revive theories affirmatively waived at an earlier stage of the case); *McKinley v. FDIC*, No. 15-1764, 2018 WL 11260466, at *1 (D.D.C. Sept. 30, 2018) (after two rounds of summary-judgment briefing in a FOIA case, plaintiff could not recant a concession he had made in a statement of undisputed facts); *In re Gibrick*, No. 12-1195, 2015 WL 965939, at *6 (Bankr. N.D. Ill. Feb. 25, 2015) (refusing to vacate two-year-old default judgment); *In re Qualcomm Antitrust Litig.*, No. 17-02773, 2023 WL 6301063, at *4 (N.D. Cal. Sept. 26, 2023) (excluding a "belated [expert] opinion" that the plaintiffs had submitted "four years after the close of expert discovery").

4

accept Exhibits that were previously attached to Jazz's summary-judgment briefs, and to which both FDA and Avadel have already responded. That motion is now fully briefed, and it can be decided without any additional delay.

**B.    Neither FDA nor Avadel has been prejudiced.**

FDA and Avadel accuse Jazz of "sandbagging" them by filing the Protective Motion after they filed their summary-judgment briefs, Avadel Opp. 1–2; *accord* FDA Opp. 15, but the accusation is misleading at best. Almost all the Exhibits were cited and discussed in Jazz's opening brief. FDA and Avadel thus had more than a month to address (and did address) those Exhibits in their own opening briefs. FDA and Avadel then addressed them again two months after that in their second summary-judgment briefs. They can hardly claim to have been surprised by Exhibits that have been addressed in all parties' merits briefs.

Moreover, the Protective Motion was a direct response, and an appropriate one, to FDA's and Avadel's arguments in their motions to strike. *See* Jazz Mot. 32–33 (collecting authority). FDA and Avadel moved to strike on the ground that Jazz's motion for judicial notice should have been filed as a motion to complete or supplement the record. Jazz responded by explaining why that was wrong and, in the alternative, filing the Protective Motion.

That response prejudiced no one. To suggest otherwise, FDA says that it "*may have* approached [the Exhibits] differently" if the judicial-notice motion had borne a different caption, but it offers no examples and offers no further explanation. FDA Opp. 15 (emphasis added). This vague speculation does not show prejudice. FDA also observes its "first merits brief could not address" the four FDA precedents that were first cited in Jazz's second brief (Exhibits 44 to 47). But Jazz cited those FDA decisions solely to rebut the extra-record arguments in Avadel's opening summary-judgment brief— arguments to which FDA does not object. *See* ECF No. 59 at 30–31, 32, 33 ("Jazz 2d S.J. Br."). In any

event, Avadel and FDA had ample chance to address (and Avadel did address) those four exhibits in their own second summary-judgment briefs.

Although Avadel claims to have "detailed the prejudice [it] would suffer if the Court granted Jazz's Motion," Avadel Opp. 3 n.1, it has done no such thing. Avadel's only suggestion of prejudice is an observation that it does not presently know, and did not know when it filed its merits briefs, which Exhibits the Court will ultimately accept. *Id.* at 2. Avadel thus suggests that any motion practice about the record must be completed before the plaintiff moves for summary judgment. *See id.* No statute, rule, or order has adopted that approach here. *See supra* pp. 3–4. The schedule that *was* ordered in this case (to which Avadel thrice agreed, *see* ECF Nos. 31, 39, and 66) also did not adopt Avadel's approach, which means that Avadel would have faced the same alleged uncertainty even if the Protective Motion had been filed in September. Third, it bears repeating that Avadel's own counsel did not follow Avadel's approach in the *Catalyst* litigation and waited until after FDA moved to strike to move to complete and supplement the record. *See supra* pp. 3–4.

FDA complains that "Jazz denied the agency the opportunity to consider [the Exhibits] in making its decision [below]," FDA Opp. 10, but FDA had every opportunity to do so. As discussed below, Jazz seeks to complete the record with essentially three categories (with some overlap) of Exhibits. Section II(B)(1) addresses Exhibits that Jazz and Avadel *specifically presented* to FDA below as well as prior orphan-drug decisions that FDA *actually discussed* in its decision letter. Section II(B)(2) addresses Exhibits (scientific articles) previously submitted to the very same agency officials in related adjudications involving Jazz's drugs, and FDA even admits that the articles were "in the Review Division's files." FDA Opp. 21. And Section II(B)(3) addresses materials that FDA itself created, including agency precedents and rules. FDA obviously had every opportunity to consider each of these documents.

With respect to Jazz's motion to supplement the record, there are likewise three overlapping categories: (1) materials that were attached to Avadel's submissions in the proceeding but omitted from the record compiled by FDA, *see* Section III(A); (2) official agency materials pertaining to FDA's procedures that even Avadel admits are properly before the Court, *see* Section III(B); and (3) scientific materials showing (a) that FDA failed (contrary to the claim in the decision letter) to consider the consensus evidence that twice-nightly sodium oxybate consolidates and improves the sleep of patients with narcolepsy, and (b) that FDA ignored the available evidence suggesting that once-nightly dosing does not provide any advantage in sleep quality, *see* Section III(C).

Finally, FDA now concedes that issue exhaustion does not apply, but nonetheless claims that those principles "explain how [it] would be prejudiced." FDA Opp. 10. To the extent issue exhaustion principles are relevant at all, they help Jazz. The decision below was the product of an "informal process" that "cannot be analogized to 'normal adversarial litigation.'" *Sandoz Inc. v. Becerra*, 57 F.4th 272, 279 (D.C. Cir. 2023).[3] FDA does not and cannot dispute that it made the decision below behind closed doors and provided Jazz no advance notice of the positions FDA would adopt. For example, Jazz had no reason to suspect that FDA would deny the existence of the comparable safety requirement, that FDA would claim that its precedent was devoid of relevant examples, that FDA would enlist medical device reviewers to overrule the Review Division, or that FDA would make the staggering assertion that twice-nightly administration of oxybate increases the risk of death for patients with narcolepsy. When FDA did finally share its reasoning, its decision took effect immediately with no further opportunity to be heard. In such circumstances, issue exhaustion principles do not, even by analogy, limit what a plaintiff may present to a court sitting in review of agency action.

---

[3] FDA says *Sandoz* is distinguishable because it involved "a legal argument about statutory interpretation," whereas this case allegedly involves "*factual* arguments." FDA Opp. 11. Not so. "[U]nder the APA … the entire case on review is a question of law." *Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 16 (D.D.C. 2018) (Mehta, J.) (cleaned up).

C.    Jazz did not forfeit the right to rely on the exhibits.

FDA repeatedly claims that Jazz "moved for summary judgment on the administrative record compiled by FDA because it 'believes' that record is 'more than sufficient' for APA review." FDA Opp. 13 (misquoting Jazz S.J. Br. 15 n.6); *see also id.* at 1, 12, 14, 15. As Jazz has already explained, that assertion is false. *See* Jazz Mot. 33 & n.15.

Here is what actually happened: After FDA announced its decision, Jazz sought an explanation through informal correspondence, *see* Griffin Decl. ¶¶ 3–6, and through FOIA, *see id.* ¶¶ 7–10. These efforts caused FDA to release the Review Division memos dated August 30, 2021 and May 1, 2023. *See id.* ¶¶ 8, 11. But those memos refer to other communications FDA still has not disclosed. Jazz sought those missing communications through FOIA, *see id.* ¶¶ 13–14, and repeatedly urged FDA to include the missing communications in the record, *see id.* ¶¶ 15–17. FDA initially indicated that it was considering doing so, but then refused. *See id.* ¶¶ 18–19.

In order to advance this litigation, Jazz ultimately elected not to further pursue the missing communications despite their obvious relevance. That decision was made in the open: Jazz explained in its opening summary-judgment brief that "the government has withheld the relevant communications," Jazz S.J. Br. 15, and observed that Jazz lacked "access to a ***complete*** record of the materials that were before the agency," *id.* at 15 n.6 (emphasis added). Far from conceding the completeness of the record (as FDA continues to falsely claim), that statement put FDA and Avadel on specific notice that Jazz believes the existing record is ***incomplete*** because ***it does not contain*** all of "the materials that were before the agency."

FDA also lacks a factual basis to claim that Jazz "moved for summary judgment on the administrative record compiled by FDA." FDA Opp. 13. To the contrary, as Jazz explained in its opening brief, it "moved for summary judgment" based on "the ***available*** records" because Jazz believed those records "are more than sufficient to show that the agency's decision" was unlawful.

Jazz S.J. Br. 15 n.6 (emphasis added). Those "available records" obviously included not just the administrative record but also the Exhibits cited *in that summary judgment brief.*

Jazz explained all this when it filed the Protective Motion. *See* Jazz Mot. 33. FDA acknowledged the explanation but declared Jazz's understanding of its own brief to be "implausible." FDA Opp. 13. But the truly implausible claim is FDA's false contention that Jazz conceded the sufficiency of the record in a footnote to a brief that (a) cited materials FDA had excluded from the record; (b) was filed together with a motion asking the Court to take judicial notice of materials FDA had not included in the administrative record; and (c) attached each such document that Jazz had cited. In short, Jazz's position has been clear and consistent: The record FDA compiled is deficient, but publicly available and properly considered materials are sufficient to prove the agency's many errors.

## II.   The Court should complete the record.

### A.   The record must include all documents that were "before the agency," meaning "all materials that might have influenced the agency's decision."

FDA appears to agree that the administrative record is incomplete if it excludes materials that were "before the agency" during the informal process below. *See* FDA Opp. 16. The parties disagree, however, as to what that phrase means. FDA contends that a record was only "before the agency" if it was "actually considered" by the individual decisionmaker(s), *see id.* at 19, implying that only records that the individual decisionmaker(s) subjectively reviewed should be in the record. For its part, Avadel claims that "[t]he question … is whether FDA *substantively relied* on the record in [its] decision." Avadel Opp. 4–5 (emphasis added).

That is not the law. The plain text of the APA commands, as relevant, that "the court shall review the whole record." 5 U.S.C. § 706. The Supreme Court and D.C. Circuit have consistently understood that command to refer to the "full administrative record that was before the [agency] at the time [it] made [its] decision." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)

(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Thus, the record in an APA case must include, at a minimum, "the order involved, any findings or reports on which that order is based, and '*the pleadings, evidence, and other parts of the proceedings before the agency.*'" *Id.* (citing Fed. R. App. P. 16(a)) (emphasis added).

That understanding refutes FDA's and Avadel's suggestions that FDA can exclude documents that were part of the proceedings just because the agency chose to ignore them. *See, e.g.*, *NRDC v. Doremus*, No. 20-cv-1150 (CRC), 2021 WL 2322349, at *2 (D.D.C. June 7, 2021) (a document need not "pass before the eyes of the final agency decision maker to be considered part of the administrative record" (citation omitted)). It similarly refutes their assertions that materials from the proceeding can be excluded just because FDA chose not to rely on them. *See, e.g.*, *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002) (a document cannot be excluded "simply because [the agency] claim[ed] that [it] did not 'rely' upon it"); *District Hosp.*, 971 F. Supp. 2d at 20 ("Nor may an agency exclude information simply because it did not rely on it for its final decision.").

The "whole record" instead includes, at a minimum, (1) the materials that interested parties submitted to the agency for its consideration and (2) the materials that the agency had readily at its disposal when it was considering the matter. That is what the cases mean when they say that the reviewing court "should have before it neither more *nor less* information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). An under-inclusive record undermines judicial review because it "allow[s] [the agency] to withhold evidence unfavorable to its case." *Id.*; *see* S. Rep. No. 79-752, at 214 (1945) ("The requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case."). To prevent that, a "complete record should cover 'any document that *might have influenced the agency's decision* and not merely those documents the agency expressly relied on in reaching its final determination.'" *Genus Lifesciences,*

*Inc. v. Azar*, No. 1:20-cv-00211-TNM, 2021 WL 270409, at *1 (D.D.C. Jan. 27, 2021) (emphasis added) (quoting *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs.*, No. CV 16-1534 (JEB), 2019 WL 2028709, at *2 (D.D.C. May 8, 2019)).

*Genus* is instructive, in part because the record dispute in that case, like this one, centered on materials that FDA had created or otherwise had in its own files. The plaintiff in that case sued FDA and moved to complete the administrative record (after summary judgment briefing had closed) with FDA materials obtained through FOIA. The plaintiff argued that the record should "include all materials that *might have influenced the agency's decision*, regardless of whether the agency ultimately relied on the information." Pl.'s Mem. in Supp. of Mot. to Complete at 6, *Genus Lifesciences, Inc. v. Azar*, No. 1:20-cv-00211-TNM (D.D.C. Aug. 6, 2020) ECF No. 54 (emphasis added) (cleaned up). In its reply brief, the plaintiff objected to FDA's "position" that "only documents actually physically reviewed and demonstrably relied upon by [the agency decisionmakers] need to be included in the record." Pl.'s Reply in Supp. of Mot. to Complete at 1, *Genus Lifesciences, Inc. v. Azar*, No. 1:20-cv-00211-TNM (D.D.C. Aug. 27, 2020) ECF No. 59. The plaintiff further explained that "'it is axiomatic that documents created by an agency itself or otherwise located in its files were before it." *Id.* at 6 (cleaned up) (quoting *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008)). The court agreed, ordering that the FOIA materials be included in the record. *See Genus Lifesciences, Inc.*, 2021 WL 270409, at *1. Avadel's lawyers in this case are the same lawyers who wrote the motion and reply just quoted.

The cases that Avadel's lawyers now cite do not support their current stance. *Oceana, Inc. v. Ross* did not say that "use of a document to justify an assertion" is *required* for completion—only that it suffices. 290 F. Supp. 3d 73, 80 (D.D.C. 2018). What's more, *Oceana* also ordered the agency to complete the record with documents that "[were] not expressly relied on for a substantive factual proposition" or even "cited in the body" of its decision. *Id.* at 80–81. Likewise, *WildEarth Guardians v. Salazar* recognized that "other evidence" *besides* substantive discussion can show that a document was

"before the [agency] and considered by [it]." 670 F. Supp. 2d 1, 6–7 (D.D.C. 2009). Those cases do not support an actual reliance standard; they refute it.

**B.      The record should be completed with Exhibits 1, 3–14, 17–22, 24–34, 36, 38–39, and 44–47 because they were before the agency.**

Jazz seeks to complete the record with three categories of Exhibits: (1) materials that were actually part of the proceeding below because they were either submitted by the parties or discussed by the agency; (2) scientific articles that were undeniably in FDA's files because Jazz previously submitted them in connection with related adjudications; and (3) other FDA precedents, rules, and statements that could have influenced FDA's decision below.[4] Neither FDA nor Avadel have a reasonable basis to object to completing the record with these materials.

**1.      Exhibits 1, 3, 10, 11, 13, 14, 17, 24, and 34 were all part of the informal process below.** Certain exhibits belong in the record because they were actually discussed *in this very adjudication.*

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████; the agency relied on the same orphan-drug decision described in Exhibit 10 in its decision below; and the agency separately alluded to the orphan-drug decision in Exhibit 1 as an adverse precedent that favors Jazz in its decision below. *See generally* Jazz Mot. 7–9, 27–28.

These materials are indisputably part of the "whole record" within the meaning of the APA even though FDA chose to omit them from the record it compiled. FDA must not be allowed to manipulate the administrative record rule to prevent Jazz from citing in court materials that Jazz, Avadel, or FDA discussed below. Consider Exhibit 1. FDA's decision letter states that FDA was

---

[4] FDA asserts that Jazz "does not seek to complete the record" with Exhibits 31, 33, and 36, FDA Opp. 15 n.5, but Jazz's motion covered all three. *See* ECF No. 61; *see also* Jazz Mot. 29.

"aware of certain language in agency documents that could be interpreted as suggesting" that a proposed drug product cannot be deemed a "major contribution to patient care" unless it has been found to be at least as safe or effective as the previously approved drug. *See* AR1365 n.147. FDA did not identify those documents in its decision, but it does not deny that Exhibit 1 is one of them,[5] and thus cannot deny that it was before the agency and "might have influenced the agency's decision," *Genus Lifesciences, Inc.*, 2021 WL 270409, at *1 (citation omitted).

Or consider Exhibit 10, which is an August 2018 memo related to FDA's decision to deem the drug Signifor a major contribution to patient care. FDA identified Signifor as a relevant precedent, AR1368, AR1379, and the record includes a memo that summarizes Exhibit 10 and adopts its recommendation, *see* AR1520. Thus, the existing record shows that FDA in fact "considered" the Signifor decision during its deliberation below, which means any of the available memos from that decision, including Exhibit 10, might have influenced FDA's decision.

With respect to Exhibits 17, 24, and 34 ███████████████████ and Exhibits 3, 11, 13 and 14 ███████████████,[5] FDA all but concedes that these materials are part of the record. FDA represents to the Court that it "would have considered" any materials included by Jazz "in any communications to FDA on this matter between September 2021 and January 2023," implying that all such materials should have been included in the record. FDA Opp. 11. The agency does not even try to explain why these materials were nevertheless excluded. And for good reason: No matter

---

[5] FDA says instead that it is "incorrect" to suggest that it "alluded" to Exhibit 1 because all documents "referenced" in its decision "are included in the record," FDA Opp. 18 n.6, but that is just wordplay. Only those documents that were "referenced" in the sense that they were *specifically identified by FDA in a footnote* are in FDA's record. Here, FDA alluded to a group of documents without identifying them, and it made no effort to include them in the record.

[5] FDA complains that "prior versions" of Exhibits 3, 13, and 14—"not the exhibits themselves"— were "cited in submissions" to the agency. FDA Opp. 18 n.7. But that is just because some of Jazz's filings below occurred years before FDA's decision. In any event, FDA did not and cannot identify any material differences between the versions.

how informal the process, no authority allows agencies to ignore or exclude from the record ███

█████████████████████████████████████████████████

2.      **Exhibits 17–22, 24, 25, 29, 30, 31, 33, 34, and 36 were all previously submitted to and reviewed by the same agency decisionmakers in connection with related decisions**. Other documents belong in the record because they were submitted to the same decisionmakers in earlier, related adjudications involving the same drugs. As Jazz explained, the scientific studies in Exhibits 17–22, 24, 25, 29, 30, 31, 33, 34, and 36 were all previously submitted to the Review Division, either in connection with the original new drug application ("NDA") for Xyrem or in connection with FDA's consideration of the potential effectiveness of Xywav as a treatment for the disrupted nighttime sleep of patients with narcolepsy. *See* Jazz Mot. 9.

FDA admits that these studies exist "in the Review Division's files," but claims they were not subjectively considered in connection with this matter. FDA Opp. 20–21. Avadel similarly concedes that "FDA possessed the articles" but asserts that "possession is not the standard." Avadel Opp. 5. Yet possession actually is nine-tenths of the law here. As Avadel's lawyers previously wrote in *Genus*, when it comes to completing (as opposed to supplementing) the record, the question is whether the articles "might have influenced the agency's decision," or "were available to the decision-making office at the time the decision was made" because "it is axiomatic that documents … located in [the agency's] files were before it." [6] *See supra* p. 11.

---

[6] FDA suggests (at 17) that Jazz can no longer rely on the cases in which some of the above language originally appeared, including *Fund for Animals v. Williams*, 391 F. Supp. 2d 191 (D.D.C. 2005), or *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64 (D.D.C. 2008), in light of *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010). But *Dania Beach* was about *supplementing* the record. It said nothing about *completing* the record, and did not cite *Fund for Animals* or *San Miguel*.

Nor is there any merit to Avadel's attempt, *see* Avadel Opp. 4 n.2, to limit the "axiom[] that documents created by an agency itself or otherwise located in its files [a]re before it," *San Miguel*, 587 F. Supp. 2d. at 76, to cases involving stipulations or inconsistent representations. Indeed, as recently as August 2020, Avadel's lawyers were broadly quoting *San Miguel* for that axiom without any such restriction. *See supra* p. 11.

These studies were available to and might have influenced FDA's decision for several reasons. First, as noted, these studies were submitted to, and reviewed by the *same individuals* within the agency that participated in the decision challenged in this suit. Second, and contrary to FDA's assertion, Jazz is not seeking to broadly "include in the record every document reviewed by Dr. Mani over the past 20-plus years." FDA Opp. 9. Rather, Jazz is seeking to add studies that were submitted to and reviewed by Dr. Mani in the context of a legally related proceeding. The action that Jazz seeks to vacate is FDA's approval of Avadel's section 505(b)(2) application for Lumryz. In seeking approval under that statutory pathway, *see* 21 U.S.C. § 355(b)(2), Avadel chose to rely on the safety and efficacy studies that Jazz submitted for Xyrem, including many of these Exhibits. *See Ipsen BioPharms., Inc. v. Becerra*, No. 22-cv-860 (DLF), 2023 WL 3319366, at *1 (D.D.C. May 8, 2023) (section 505(b)(2) applications must rely "on clinical studies that another entity conducted for an already-approved listed drug"); *see also* Jazz Mot. 9 (showing that Exhibits 18, 19, 20, 21, 22, 24, and 25 were all considered as part of Dr. Mani's review of the new drug application for Xyrem).

Third, these studies address one of the core scientific questions that FDA purported to answer in its decision (*i.e.*, the effect of twice-nightly sodium oxybate therapy on the disrupted sleep of patients with narcolepsy). *FDA is the party who claims* that its answer (*i.e.*, that twice-nightly sodium oxybate therapy harms sleep, leading to an increased risk of death) reflects the "general base of knowledge" about oxybate and was based on a "consultation of the literature." AR1381–82. That claim either is an acknowledgement that FDA considered the "literature" about oxybate that all now agree was in the possession of the relevant agency officials, or it is a concession on the merits that FDA's answer was arbitrary and capricious because it failed to consider relevant factors. Either way, that "literature" is properly before the Court. *See infra* pp. 19–21.

3.    **Exhibits 1, 3–14, 26, 27, 38, and 44–47 are all FDA-generated materials dealing with relevant topics that were necessarily before the agency.** Still other documents belong in the

record because they were created by FDA, available to the decisionmakers, and could have influenced their decision. Exhibits 1 and 10 were discussed above, *see* Section II(B)(1), and are prior orphan-drug decisions. Exhibits 9 and 44–47 are also prior orphan-drug decisions. These FDA precedents were before the agency during the proceeding below, both in the general sense that they are relevant legal authority, and for the specific reason that FDA's decision letter represents that the agency reviewed the entire universe of prior orphan-drug decisions and determined that its precedents were "devoid of instances" favoring Jazz. AR1365.

FDA's past decisions about the relationship between oxybate and disrupted nighttime sleep (Exhibits 26, 27, and 38) were before the agency for similar reasons. Because they address the same subject matter, FDA was obligated to consider them. As a matter of law, FDA cannot ignore relevant prior agency decisions. *See, e.g.*, *United States v. Diapulse Corp. of Am.*, 748 F.2d 56, 62 (2d Cir. 1984) ("we must insist that the FDA apply its scientific conclusions evenhandedly and that it not grant to one person the right to do that which it denies to another similarly situated") (cleaned up).

The remaining agency materials (Exhibits 3–8 and 11–14) are either prior FDA guidance about the need to reduce sodium or procedural rules governing FDA's organization and dispute resolution. Avadel concedes that Exhibits 4 through 8 are all properly before the Court. *See* Avadel Opp. 1. But the same is true of the rest as well. These agency materials are legal authority that apply to FDA and its decisionmakers. Because those authorities might have influenced the eventual decision they were before the agency and should be in the record.

FDA's remaining arguments go nowhere. The agency worries, *see* FDA Opp. 19, that Jazz's approach could yield an "unmanageable" record. But even with Jazz's additions, the full record would total around 2,600 pages—a tiny sum in a modern APA case. *Cf. Georgia ex rel. Olens v. McCarthy*, 833 F.3d 1317, 1320 (11th Cir. 2016) (million-page record). And the only party that has "cherry-picked documents it believes are favorable" is the agency. *Contra* FDA Opp. 20. To the extent FDA has

16

discovered more documents that should be in the record that Jazz has not identified (such as, say, the missing communications between OOPD and the Review Division), it is free to complete or supplement the record with those materials with Jazz's consent.

## III.   The Court should supplement the record.

The record should be supplemented with Exhibits 4–8, 16–22, 24–25, 28–36, and 39 based on three "unusual circumstances." *City of Dania Beach*, 628 F.3d at 590; *see* Jazz Mot. 29–32.

### A.   FDA at least negligently excluded articles attached to Avadel's submissions in the proceeding below.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ In its summary-judgment briefs, Jazz cited three of the scientific articles ████████████████████ ███████████████████ (Exhibits 17, 24, and 34). ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

FDA has no meaningful response. FDA tries to deny that it "delete[d]" the articles ██████ █████████████████████, *id.* at 18 n.8, but ultimately does not deny that the articles (1) *were attached* to Avadel's submissions to the agency, but (2) *were not* included in the record FDA compiled. Nor can FDA explain why those articles—██████████████████████████████████ ████████████████████—were not included in the administrative record. In the absence of a justification for omitting the articles, the only possible conclusion is that they were, at least, "negligently excluded." *City of Dania Beach*, 628 F.3d at 590.

Avadel and FDA rejoin that none of this matters because there was no "bad faith." FDA Opp. 23; Avadel Opp. 6. Jazz does not agree that bad faith is required. This "unusual circumstance" exists if the agency "deliberately *or negligently* excluded documents," FDA Opp. 22–23; Avadel Opp. 6 (emphasis added), and negligence is distinct from bad faith, *see Daniel v. Smoot*, 287 F. Supp. 3d 74, 80 (D.D.C. 2018) ("Bad faith is more than mere negligence"); *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 6 (D.D.C. 2013) ("Bad faith, however, requires a finding of *intentional* conduct, not conduct that is merely negligent."). Indeed, the D.C. Circuit has ordered an agency to supplement the record because it was "negligent in failing to discover [internal] documents" when making its decision—without saying a word about bad faith. *Kent Cnty. v. EPA*, 963 F.2d 391, 395–96 (D.C. Cir. 1992). No more should be required here either.[7]

But even if FDA and Avadel are right and bad faith is required, that standard is met here too. In its own brief, FDA implies that it would never omit from the record documents that were attached to a party's communications related to an exclusivity decision. *See* FDA Opp. 11–12 ("Jazz could have included its exhibits in any communications to FDA on this matter between September 2021 and January 2023, and FDA would have considered them before reaching the May 2023 decision, just as it did the exhibits that Jazz attached to its communications that are in the record.") (citations omitted).

████████████████████████████████████████████

---

[7] Although the D.C. Circuit later said that "'[m]eeting this exception requires a 'strong showing of [agency] bad faith,'" that was *dicta*; the movant there "d[id] not explain—or even try to explain—how its request" to supplement the record satisfied the court's test. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015). And that *dicta* relied on a prior case where the movant "d[id] not contend that the agency deliberately or negligently excluded documents," instead asserting that "bad faith" produced the underlying agency decision. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996). But even if these cases had held that "bad faith" is required, they would not be binding because such a rule would conflict with *Kent County*, and if two D.C. Circuit panel decisions conflict, the earlier controls. *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

████████████████████████ Agencies have no business manipulating the scope of the record for strategic gain, as FDA has done here.

### B. The record does not show whether FDA complied with its procedural obligations.

"[T]he D.C. Circuit has consistently stated that where the district court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence." *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 4 (D.D.C. 2017) (Mehta, J); *see* Jazz Mot. 30. FDA does not contend that the existing record provides the necessary clarity, instead declaring that Jazz has failed to allege "gross procedural deficiencies." FDA Opp. 22–23. But if such a showing is required, Jazz has made it. When OOPD disagreed with the Review Division's clinical-superiority decision, its standard operating procedures gave it several options. OOPD sidestepped those procedures and obtained a second opinion from a different center that has no jurisdiction or experience regulating drugs that was willing to give OOPD the answer it wanted—leading to an arbitrary and capricious result. *See* Jazz SJ Br. 28–30. Thus, this Court may review not only the single policy included in the record, AR2186, but also the relevant sections of FDA's Staff Manual Guide (Exhibits 4 and 8), and the materials specifying the relevant organizational structures and responsibilities within the agency (Exhibits 5–7).

### C. Background information is needed to determine whether FDA considered all relevant factors.

Finally, supplementation is also warranted because further information is needed "to determine whether the agency considered all the relevant factors." *City of Dania Beach*, 628 F.3d at 590 (citation omitted). As Jazz explained, the scientific articles (Exhibits 16–22, 24–25, 28–36, and 39) help show that FDA overlooked two relevant factors. First, FDA failed to consider the overwhelming body of scientific literature (which it now concedes was largely in its possession) clearly establishing that twice-nightly sodium oxybate *consolidates* and *improves* the sleep of patients with narcolepsy. Second,

FDA failed to consider the literature that is available to assess the comparative impact of once- and twice-nightly dosing on the sleep of patients with narcolepsy. *See* Jazz Mot. 31–32. In the language of the cases, both topics are "intermediary evidentiary factors" that FDA should have fully considered and addressed along the way to reaching its "ultimate conclusion" that Lumryz makes a major contribution to patient care notwithstanding its elevated sodium burden. *See Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 70 (D.D.C. 2020) ("In a complicated, scientific analysis, … consideration of the intermediary evidentiary factors which lead to the ultimate conclusion are the very means by which the agency renders its decision and, generally speaking, any of them can be a 'relevant factor' justifying supplementation of the administrative record if ignored.") (quoting *Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 8 (D.D.C. 2001)).

In a rare point of agreement, FDA acknowledges that these topics are relevant factors because they are "'intermediary evidentiary factors' that led to FDA's 'ultimate conclusion' that Lumryz makes a major contribution to patient care." FDA Opp. 24. But FDA overreaches when it claims that this is merely a "factual disagreement" or that the Court cannot consider the scientific articles because "all that matters is FDA conducted the comparison." *Id.* (cleaned up). Whether FDA has complied with the reasoned-explanation requirement of the APA is a question of law. *See supra* p. 7 & n.3. To determine whether the APA has been satisfied, the court must look behind an agency's claims. *See, e.g.*, *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (citation omitted) (courts "do not defer to an agency's conclusory or unsupported assertions"). The court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Relevant here, that requires the court to assess "'whether [the agency's] decision was based on a consideration of the relevant factors.'" *Id.* (citation omitted). And when it is answering that critical question, a court cannot "just 'take the agency's word that it considered all relevant matters.'" *Nat'l*

*Wilderness Inst. v. U. S. Army Corps of Eng'rs*, No. 01-0273, 2002 WL 34724414, at *4 (D.D.C. Oct. 8, 2002) (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153 (9th Cir. 1980)). Instead, the Court is free to and should "consider evidence not included in the administrative record" to ensure that the agency did so adequately. *Sw. Ctr. for Biological Diversity*, 131 F. Supp. 2d at 7.

## CONCLUSION

The Court should grant Jazz's motion to complete and supplement the record.

January 5, 2024                                    Respectfully submitted,

                                                   /s/ Kwaku A. Akowuah
                                                   Kwaku A. Akowuah (D.C. Bar No. 992575)
                                                   Sean C. Griffin (D.C. Bar No. 499537)
                                                   Tobias S. Loss-Eaton (D.C. Bar No. 1019749)
                                                   Peter A. Bruland (D.C. Bar No. 1600717)
                                                   Sidley Austin llp
                                                   1501 K Street N.W.
                                                   Washington, DC 20005
                                                   T: (202) 736-8000
                                                   F: (202) 736-8711
                                                   kakowuah@sidley.com
                                                   sgriffin@sidley.com
                                                   tlosseaton@sidley.com
                                                   pbruland@sidley.com

                                                   *Counsel for Plaintiff Jazz Pharmaceuticals Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I electronically filed this motion using the Court's CM/ECF system. Consistent with the August 7, 2023 Protective Order entered in this case, all participants will be served with the Notice of Electronic Filing and the foregoing motion via email.

Date: January 5, 2024                                         /s/ Kwaku A. Akowuah
                                                                        Kwaku A. Akowuah