UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAZZ PHARMACEUTICALS, INC., *Plaintiff*, v. XAVIER BECERRA, *et al.*, *Defendants*, and AVADEL CNS PHARMACEUTICALS, LLC, *Intervenor-Defendant.* | Case No. 1:23-cv-01819-APM |

**RESPONSE TO NOTICE OF SUPPLEMENTAL EXHIBIT**

Federal Defendants respectfully submit this response to Plaintiff Jazz Pharmaceuticals, Inc.'s (Jazz's) Notice of Supplemental Exhibit. ECF No. 99. Nothing in that Notice or Jazz's new Exhibit 48 (the Mycapssa Exclusivity Memorandum), ECF No. 99-2, undermines Federal Defendants' arguments in this case or supports Jazz's contention that the U.S. Food and Drug Administration (FDA) has—or ever had—a policy of requiring a showing of comparable safety and effectiveness before finding a major contribution to patient care.[1]

---

[1] As an initial matter, the Court should decline to consider this extra-record document. Jazz suggests that this Court should consider it for the same reasons Jazz urges the Court to consider its Exhibits 1 and 10. ECF No. 99 at 6 n.4. In addition to the fact that

As the Exclusivity Memorandum explains, FDA designated Mycapssa (an oral dosage form of octreocide to treat acromegaly) as an orphan drug in 2010 based on a plausible hypothesis that it would provide a major contribution to patient care over injectable octreotide treatments. ECF No. 99-2 at 1, 3. The agency approved Mycapssa in 2020, and concluded in 2024 that it is eligible for orphan-drug exclusivity based on a showing of a major contribution to patient care. *Id.* at 4, 5-6.

In so concluding, the memorandum makes clear that "[a] drug is *not required to have comparable effectiveness or safety* to the previously approved drugs in order to provide a [major contribution to patient care] over those drugs, but relative effectiveness and safety of the drug may be relevant in assessing whether a drug makes a [major contribution to patient care]." *Id.* at 5 (emphasis added). In other words, in finding that Mycapssa made a major contribution to patient care, FDA rejected the exact argument that Jazz makes here.

The Mycapssa Exclusivity Memorandum is consistent with FDA's regulations, which do not establish comparable safety and effectiveness as a requirement for finding a major contribution to patient care. *See* ECF No. 94 at 23. Indeed, "[t]he only references to 'safety' or 'effectiveness' in 21 C.F.R. § 316.3(b)(3) concern 'greater safety' and 'greater effectiveness,'" which "expressly provides that a major contribution to patient care may

---

the document postdates the decisional memorandum at issue here and therefore is not properly before the Court, the Court should reject Jazz's request for the reasons set forth in FDA's briefs addressing Exhibits 1 and 10. *See* ECF Nos. 96, 97.

2

be found even 'where neither greater safety nor greater effectiveness has been shown.'" *Id.* (quoting 21 C.F.R. § 316.3(b)(3)(iii)).

To be sure, the Mycapssa Exclusivity Memorandum acknowledged that the Office of Orphan Product Development (OOPD) "erroneously stated" at the designation stage in 2010[2] that the sponsor would have to demonstrate comparable safety and efficacy upon approval to become eligible for exclusivity. *Id.* at 5 n.7. It also acknowledged that OOPD made similar erroneous statements in a consult request to another agency component in 2020. *Id.* But the memorandum explains why these statements were erroneous: "OOPD is not aware of any past precedents that manifest the application of such a policy upon approval when FDA is determining eligibility for [orphan-drug exclusivity] or when it is considering whether a drug may be approved in light of another sponsor's [orphan-drug exclusivity]." *Id.* Indeed, "[t]o OOPD's knowledge, agency precedent is devoid of instances in which we refused to find a [major contribution to patient care] for a drug based only on a failure to show comparable safety or efficacy." *Id.*

If anything, the Mycapssa documents are another example of Jazz failing to find precedents where FDA did what Jazz wants it to do now. *See* ECF No. 94. Mycapssa is the fifth precedent Jazz has pointed to in its misguided contention that the agency has a policy of requiring comparable safety and effectiveness. Jazz previously relied on

---

[2] The Mycapssa designation letter predates the 2013 final rule, which did not adopt a requirement that a sponsor demonstrate that the drug provides comparable safety and effectiveness to the approved drug. *See* ECF No. 94 (citing 78 Fed. Reg. 35,117, 35,124 (June 12, 2013)).

instances where FDA had simply noted that the drugs had similar safety profiles, *see, e.g.*, AR1639; Griffin Decl. Ex. 10, or FDA assumed comparable safety and efficacy (without requiring it) at the designation stage because of how little information is available at that stage, AR1471. As previously demonstrated, each precedent identified by Jazz—Ravicti, Orenitram, Signifor LAR, Ultomiris, and now Mycapssa—is inapposite. *See* ECF No. 94 at 24-26.

The Mycapssa documents align with the administrative record and FDA's arguments in this case. *See, e.g.*, AR546 & n.147 (noting that, "based on our review, agency precedent is devoid of instances in which we refused to find a [major contribution to patient care] for a drug based on failure to show comparable safety or efficacy," while acknowledging "certain language in agency documents that could be interpreted as suggesting FDA has such a policy"); ECF No. 95 ("The decisional memorandum acknowledged that some language in regulatory documents could be construed as saying such a policy exists, but it also explains that, after a careful review of its practice, FDA determined that no such policy exists."). The Mycapssa 2010 designation letter and 2020 consult request are simply "agency documents" that initially (and mistakenly) suggest the existence of a comparable safety and effectiveness policy. They do not disprove FDA's conclusion that, notwithstanding such statements, no such policy exists.

In short, it remains the case that "Jazz has not identified any instance where FDA did what Jazz wants it to do now: determine that a drug that otherwise demonstrated a major contribution to patient care[] was blocked by another orphan drug's exclusivity

because the later drug fails to show comparable safety and effectiveness." ECF No. 94. All Jazz has done is identify another, more recent, instance of FDA explaining that it has no such policy.

| | |
|---|---|
| September 12, 2024 | Respectfully submitted,<br><br>/s/ Noah T. Katzen<br>Noah T. Katzen (D.C. Bar No. 1006053)<br>Trial Attorney<br>Consumer Protection Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 386<br>Washington, DC 20044-0386<br>(202) 305-2428<br>(202) 514-8742 (fax)<br>Noah.T.Katzen@usdoj.gov<br><br>*Attorney for Federal Defendants* |